DECISION AND JOURNAL ENTRY
{¶ 1} Defendant-Appellant Linvell Vactor has appealed from a decision of the Lorain County Court of Common Pleas that found him guilty of trafficking in marijuana, resisting arrest, possession of drug abuse paraphernalia, and obstructing official business. This Court affirms.
 I {¶ 2} On January 16, 2002, the Lorain County Grand Jury indicted Appellant on four counts: aggravated robbery, a violation of R.C.2911.01(B); possession of drug abuse paraphernalia, a violation of R.C.2925.14(C)(1); trafficking in marijuana, a violation of R.C. 2925.03(A)(2); and resisting arrest, a violation of R.C. 2921.33(A); the charge for trafficking in marijuana included an additional finding that the trafficking violation occurred within the vicinity of a school or in the vicinity of a juvenile. Appellant pleaded not guilty to the counts as charged in the indictment. A supplemental indictment was later filed on Feburary 20, 2003, which charged Appellant with obstructing official business, a violation of R.C. 2921.31(A). Appellant pleaded not guilty to that count as well. The matter proceeded to a jury trial.
 {¶ 3} At the close of the prosecution's case, Appellant moved for acquittal pursuant to Crim.R. 29. The motion was denied and Appellant put on a defense. At the close of all evidence, Appellant renewed his Crim.R. 29 motion and again the motion was denied; however, the trial court noted that, with regard to the additional finding that Appellant sold marijuana within the vicinity of a school, it would "hear what the jury [had] to decide about [the additional finding], then [the court] may take up the issue only if [Appellant] files a motion within 14 days after the verdict." The jury found Appellant not guilty of aggravated robbery. However, he was found guilty of obstructing official business, resisting arrest, trafficking in marijuana, and possession of drug abuse paraphernalia. The jury also found Appellant guilty of trafficking in marijuana on school premises, or in a school building, or within one thousand feet of the boundary of any school premises. Before Appellant was sentenced, Appellant moved for acquittal of the additional finding that Appellant was guilty of selling marijuana at or near school premises. The state filed a response to the motion. The trial court failed to rule on the motion. Appellant was sentenced accordingly.
 {¶ 4} Appellant initially appealed the trial court's judgment to this Court on May 10, 2002, but the appeal was dismissed. Appellant filed an application for reopening, and this Court granted said application. Appellant has now asserted two assignments of error for this Court's review.
 II Assignment of Error Number One
"The evidence presented at trial was insufficient to establish appellant's guilt beyond a reasonable doubt."
 {¶ 5} In Appellant's first assignment of error, he has only challenged his convictions for resisting arrest, obstructing official business, and trafficking in marijuana. Appellant has argued that the there was insufficient evidence to find him guilty of these charges. We disagree.
 {¶ 6} Sufficiency is a legal standard which is applied to determine whether the evidence admitted at trial is legally sufficient to support a conviction for the offense. See State v. Thompkins (1997),78 Ohio St.3d 380, 386. When analyzing issues of sufficiency of the evidence, a reviewing court must view the evidence "`in the light most favorable to the prosecution,' and ask whether `any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.'" State v. Carter (2001), 72 Ohio St.3d 545, 553, quoting Jackson v. Virginia (1979), 443 U.S. 307, 319, 99 S.Ct. 2781,61 L.Ed.2d 560.
 {¶ 7} In the instant case, Appellant was convicted of trafficking marijuana, a violation of R.C. 2925.03(A)(2), with an additional finding that he sold marijuana within the vicinity of school premises. R.C.2925.03(A)(2), provides:
"(A) No person shall knowingly do any of the following:
"* * *
"(2) Prepare for shipment, ship, or transport, deliver, prepare for distribution, or distribute a controlled substance, when the offender knows or has reasonable cause to believe that the controlled substance is intended for sale or resale by the offender or another person."
 {¶ 8} Pursuant to R.C. 2925.03(C)(3)(a), a violation of R.C.2925.03(A)(2) is a felony of the fifth degree. If, however, "the offense was committed in the vicinity of a school * * * trafficking in marihuana is a felony of the fourth degree[.]" R.C. 2925.03(C)(3)(b). The phrase "vicinity of a school" refers to when the "offender commits the offense on school premises, in a school building, or within one thousand feet of the boundaries of any school premises." R.C. 2925.01(P). Appellant has argued that there was insufficient evidence to show that he was near a school premises at the time he was accused of selling marijuana.
 {¶ 9} Appellant was also convicted of resisting arrest, a violation of R.C. 2921.33(A), which provides: "No person, recklessly or by force, shall resist or interfere with a lawful arrest of the person or another." With regard to this conviction, Appellant has argued that he was not under "lawful arrest" when he attempted to flee the officer's custody.
 {¶ 10} Appellant was convicted of obstructing official business, a violation of R.C. 2921.31(A), a felony of the fifth degree. R.C. 2921.31(A) provides:
"No person, without privilege to do so and with purpose to prevent, obstruct, or delay the performance, by a public official of any authorized act within the public official's capacity, shall do any act that hampers or impedes the public official in the performance of the public official's lawful duties."
 {¶ 11} Depending on the amount of force used in regard to this charge, the crime of obstructing official business is a misdemeanor of the second degree or a felony of the fifth degree. R.C. 2921.31(B) provides:
"Whoever violates this section is guilty of obstructing official business. Except as otherwise provided in this division, obstructing official business is a misdemeanor of the second degree. If a violation of this section creates a risk of physical harm to any person, obstructing official business is a felony of the fifth degree."
 {¶ 12} The phrase "physical harm to persons" means "any injury, illness, or other physiological impairment, regardless of its gravity or duration." R.C. 2901.01(A)(3).
 {¶ 13} At trial, Officer Leslie Palmer, the arresting officer, presented testimony concerning the events that took place on December 3, 2001. Officer Palmer explained that he was employed with the City of Lorain for approximately five years as a patrolman. As a road patrolman, Officer Palmer was responsible for "[a]nything from taking reports to investigating robberies, domestic violence, thefts, anything along [that] nature." Officer Palmer stated that prior to working with the City of Lorain, he worked with the City of New Canaan, Connecticut for four years on "road patrol."
 {¶ 14} Officer Palmer testified that on the afternoon of December 3, 2001, he was on patrol when he received a call from dispatch ten minutes before 5:00 p.m. The dispatcher stated that an unidentified male had robbed Crystal Clear Cleaners, located at the corner of West Erie Avenue and Oberlin. The suspect was described as a black male, wearing a blue plaid flannel shirt and carrying a bag. Officer Palmer stated that he immediately responded to the call, and he encountered Appellant approximately six to eight blocks from the Crystal Clear Cleaners "in the area of Washington Avenue and 6th Court[,]" which was located within one hundred feet of Lorain Middle School.
 {¶ 15} Upon encountering Appellant, Officer Palmer observed that Appellant fit the description of the robbery suspect. The officer stated that he immediately radioed dispatch of his location, parked his car, opened the door, and "stood at the door and * * * asked [Appellant] to put his hands on the car." Officer Palmer testified that he stopped Appellant simply because "he matched the description. He had a black leather jacket on; however, it was unzipped and he was wearing a blue plaid flannel shirt underneath. He also had a bag of some type. [He] believe[d] it was in his left hand at the time [he] spotted [Appellant]." Appellant asked the officer to explain why he was being stopped and Officer Palmer again asked Appellant to put his hands on the police cruiser. Appellant complied with the officer's command
 {¶ 16} Once Appellant placed his hands on the officer's patrol car, Officer Palmer conducted a "pat down" to "make sure that [he was] safe as well as the area around [him]." Officer Palmer described the events that took place when he attempted to pat down Appellant. The officer explained:
"As I started to pat [Appellant] down, his hands were on the front of the patrol unit in a spread motion like this. And, as I started patting him down, he started to push off the car.
"I told him, relax, keep your hands on the car.
"When I felt his left front pocket of his jeans, I immediately recognized that there was going to be drug paraphernalia there. It was soft to the touch, it was bulky, and you could — you get a sensation of paper, if you've ever crinkled paper.
"At that time, that's when [Appellant] pushed off the car. I grabbed a hold of his left arm at that time, tried to put it behind his back. He stiffened that arm up. He turned towards me. I released my grasp on his left arm, grabbed his right arm. And it is easier to control a suspect on the ground, so I conducted a foot sweep in order to take him to the ground to control him.
"At that time I went down with him. Next thing I know we're grappling around on the road at the corner * * *. I can't tell you exactly how long I was on the ground grappling with [Appellant]. * * * [Appellant] was on top of me. I was able to grab him and push him off of me to my right. He was off me at that point. He had the chance to run at that time. His hands were then outstretched towards my duty weapon in a grasping motion with his hands together."
 {¶ 17} Officer Palmer stated that Appellant was unable to grab his gun because the officer "took [his] right arm and [he] swung down to [Appellant's] hands to keep them away from [his] duty weapon. And then [he] threw a punch towards [Appellant]. [Officer Palmer] * * * hit [Appellant] in the chest and knocked him back at that time; that's when [Appellant] did regain his feet, [Officer Palmer] regained [his] feet, and [Appellant] did flee." As Appellant attempted to flee, Officer Palmer grabbed Appellant's right arm and jacket. However, Appellant was able to break lose and run in the direction of Lorain Middle School. Officer Palmer gave chase, and he was able to grab Appellant again. He told Appellant "to stop resisting." Appellant was once again able to break free from Officer Palmer's grasp. Appellant ran southbound on Washington Avenue and darted in between two houses.
 {¶ 18} Officer Palmer testified that a private citizen, Mr. James Eppler, aided him in stopping Appellant. As the officer was chasing Appellant, he noticed a "yellow streak go running" by him in the direction of Appellant and follow Appellant as he ran in between two houses. Officer Palmer stated that as he was coming around the corner when he saw Appellant and Mr. Eppler "on the ground. * * * James Eppler was like towards the side, but up in [Appellant's] chest area. [He saw Appellant's] hand down at his right pocket. [Appellant] was saying something, but [Officer Palmer] ha[d] no idea what he was saying to James Eppler."
 {¶ 19} Officer Palmer, afraid that he may have missed something in his initial pat down of Appellant, ran towards the two men. The officer grabbed both of Appellant's arms, and told Mr. Eppler to "get out of the way" because he didn't want Mr. Eppler hurt. Officer Palmer restrained Appellant, but Appellant resisted, so the officer "hit him with a knee strike, which is the upper thigh area." Appellant continued to resist and he refused to allow the officer to place his right arm behind his back. In an effort to restrain Appellant, the officer was forced to "deliver another knee strike to the same leg." At this time, another officer, Officer John Kovach, arrived to assist Officer Palmer in restraining Appellant.
 {¶ 20} Once Appellant was restrained, he was handcuffed and Officer Palmer conducted another pat down. The officer testified that he:
"[P]ulled out from [Appellant's] left front pocket a large quantity of marijuana which later turned out to be seven individually wrapped baggies that were tied in a knot in one bag, a second bag that also had [thirteen] baggies that were tied in a knot similarly. There was another baggy that was found in [Appellant's] jacket pocket, the left breast pocket which [Officer Palmer] had not patted down at that time once he was taken back to the cruiser."
 {¶ 21} Officer Palmer further testified that he recovered $150 from Appellant, but he was unable to remember where he exactly found the money on Appellant's body. After the pat down, Appellant was taken to the station for booking.
 {¶ 22} The officer stated that he had previously arrested individuals for marijuana several times and in his mind, he believed that when a person has individually wrapped bags of "marijuana that have been placed in small corners of a baggy and then tied off in a knot is used for the quick sale on the street; like if a person rolled up in a car, the exchange is made quickly and then they drive away." Based on the fact that Appellant had a total of twenty-one individually wrapped baggies, he believed that the baggies were intended for resale. Officer Palmer further explained that individually wrapped baggies of marijuana are "packaged that way for quick resale in controlled quantities, such as it may cost $10 for that particular type of small amount of marijuana that's tied up in a corner of a baggy, so the customer knows what they're getting and the seller also knows exactly how many baggies and how much he's supposed to get in return." When asked if "it is possible that somebody could be purchasing [twenty-one baggies of marijuana] for their own use[,]" Officer Palmer responded: "It would be possible, but unlikely, yes."
 {¶ 23} Officer Palmer also testified that he never suffered any serious physical harm as a result of his altercation with Appellant. However, he did state that he had a sore wrist the next day.
 {¶ 24} On cross-examination, Officer Palmer admitted that he never received any "[s]pecial training in narcotics" while working for the Lorain Police Department." However, he did receive such training when he was employed in Connecticut. Officer Palmer further admitted that when he initially stopped Appellant he did not tell him he was under arrest. Officer Palmer also failed to tell Appellant he was under arrest when he found something that felt like "crinkled paper" on the initial pat down. Officer Palmer also conceded on cross-examination Appellant never struck him, that the yellow shopping bag Appellant was carrying contained a bag of potato chips, and that Appellant was not the person suspected of robbing Crystal Clear Cleaners.
 {¶ 25} Mr. James Eppler, the private citizen that aided Officer Palmer in the arrest of Appellant, also testified at trial. Mr. Eppler, who was under the age of eighteen at the time of the arrest, testified that on December 3, 2001, he was riding home with his mother when he saw Officer Palmer patting down Appellant. He saw Appellant turn around and wrestle the officer to the ground. At that point, Mr. Eppler told his mother to stop the car and he "got out [of the car], chased [Appellant], then [they] both — [they] met up in between two houses. Then [Mr. Eppler] got [Appellant] to the ground and held him there until the officer could get over to him." Just as Officer Palmer had testified, Mr. Eppler stated that when Officer Palmer tried to restrain Appellant, he refused to place his arms behind his back.
 {¶ 26} Detective Roger Watkins also testified on behalf of the state. Detective Watkins was employed with the Lorain County Police Department, Narcotics Division as a narcotics detective; he was employed with the Lorain County Police Department for approximately four and a half years and with the Narcotics Divisions for nine months. Prior to his position in the Narcotics Division, Detective Watkins led the Lorain County Police Department in felony drug arrests and misdemeanor drug arrests. As a narcotics detective, Detective Watkins initiated or followed up on drug investigations. "[He] weigh[s], test[s], send[s] drugs to [the Bureau of Crime Investigation], interview[s], arrest[s], and [executes] search warrants." Detective Watkins was the detective responsible for following up on Appellant's drug arrest.
 {¶ 27} Detective Watkins stated that he made approximately two hundred felony and misdemeanor drug arrests and he made approximately one hundred marijuana arrests. He also had two or three controlled marijuana buys. Based upon this experience, the state asked Detective Watkins if he ever had to determine whether marijuana confiscated during an arrest was used for personal use or in preparation for sale. The detective responded:
"Preparation for distribution, I would say an ample amount of drugs individually packaged with equal — with, you know, equal amounts of contraband, whether it be marijuana or cocaine, separated in a way that each bag weighs approximately the same, so they can — you know, it's easy."
 {¶ 28} The detective further stated that he had to determine whether possession of a controlled substance was for personal use or preparation for sale "maybe 15 times." Detective Watkins explained that, in his opinion, the drugs that were found on Appellant was intended for resale because "the individual bags, each bag approximately contained the same amount of contraband"
 {¶ 29} On cross-examination, the defense asked Detective Watkins if he had ever arrested someone for possession of marijuana and later determined that the marijuana was for personal use. Detective Watkins replied: "On a few occasions, I've — I have to answer with exactly what I remember. I can only remember one or two baggies usually as being personal use. * * * I mean, I can't remember an incident where somebody's had six or seven baggies, you know, that I've arrested and said that's definitely for personal use. I can't remember anything like that. It's usually two bags, one bag of marijuana." Detective Watkins further stated that he specifically remembered an arrestee having eleven baggies of marijuana and charging that person with preparation of drugs for sale.
 {¶ 30} Detective Steven Curry was called by the defense to testify at trial. Detective Curry was a juvenile detective with the Lorain County Police Department, stated that he was assisting another officer with a robbery that occurred at Crystal Clear Cleaners. He was later called to assist Officer Palmer at approximately 5:15 p.m. When he arrived on the scene, he observed Officer Palmer in the process of handcuffing Appellant. When Appellant was arrested it was unclear whether he was the robbery suspect. Detective Curry stated that the police were searching for a black male, wearing a multicolored shirt, predominantly blue in color, with a white bag. In Detective Curry's opinion, Appellant fit the description; however, he explained that it was later determined that Appellant was not the robbery suspect.
 {¶ 31} Based upon the testimony presented at trial, this Court finds that there was sufficient evidence to convict Appellant of trafficking in marijuana. Both Officer Palmer and Detective Watkins testified that Appellant was found carrying one large bag containing twenty-one smaller bags of marijuana. Officer Palmer testified that based on his experience, he believed that Appellant was attempting to sell marijuana because the marijuana was contained in individual baggies, which indicated that it was prepared for quick resale on the streets. Detective Watkins, who had the opportunity to determine whether possession of a controlled substance was in preparation for sale or personal use on fifteen occasions, also testified that he believed Appellant was attempting to distribute marijuana for resale because of the way the marijuana was packaged and each bag contained the same amount of marijuana.
 {¶ 32} Personal use of marijuana, according to Detective Watkins, generally occurs when a defendant is found carrying one or two bags of marijuana, rather than the large amount found in Appellant's possession. The jury could find beyond a reasonable doubt that, based on the law enforcement officers' testimony, the twenty-one individually wrapped bags of marijuana were intended for resale, rather than personal use. SeeState v. Nelson, 8th Dist. No. 81286, 2003-Ohio-559, at ¶ 19 (holding that the testimony presented at trial indicating that possession of sixteen separate baggies containing marijuana was sufficient to prove that the marijuana was intended for sale and not personal use). It was within the discretion of the jury to believe or disbelieve Detective Watkins' opinion that Appellant was attempting to resell marijuana on the streets. We refuse to second-guess the jury's credibility determination.
 {¶ 33} Similarly, the state proved beyond a reasonable doubt that Appellant was guilty of selling marijuana within the vicinity of a school. Officer Palmer testified that Appellant was located approximately one hundred feet from Lorain Middle School, at the corner of Washington Avenue and 6th Court. If believed, this testimony was sufficient evidence for the jury to conclude that Appellant was selling drugs near a school.
 {¶ 34} This Court further finds that the state presented sufficient evidence to prove that Appellant was guilty of resisting arrest. A lawful arrest is an essential element of the crime of resisting arrest. Statev. Thompson (1996), 116 Ohio App.3d 740, 743. To prove that there was a lawful arrest, "the state must prove not only that there was a reasonable basis to believe an offense was committed, but also that the offense was one for which the defendant could be lawfully arrested." Id. 743-744. The state need not prove that the defendant was in fact guilty of the offense for which the arrest was based when proving the element of lawful arrest. State v. Sansalone (1991), 71 Ohio App.3d 284, 285.
 {¶ 35} This Court further finds that there was sufficient evidence for the jury to find that Appellant was resisting arrest after he was tackled by Mr. Eppler and Officer Palmer attempted to restrain his arms. The testimony presented by Officer Palmer, however, indicated that Appellant was not under arrest when he was initially stopped nor did Officer Palmer intend to arrest Appellant. In fact, Officer Palmer was conducting a routine Terry stop when he began to perform a pat down of Appellant; the fact that Appellant matched the description of the robbery suspect and was within six to eight blocks of the dry cleaners provided Officer Palmer with reasonable suspicion, which justified his decision to stop and investigate. See In re Byrne (July 23, 1999), 11th Dist. No. 98-6-2150, 1999 Ohio App. LEXIS 3418, at *10. Appellant fled while Officer Palmer was completing a Terry stop and before the officer could confirm that Appellant possessed marijuana. Appellate courts have held that "[w]here articulable suspicion, but not probable cause to arrest exists, fleeing from a request for a Terry-type stop, while not behavior we condone in any way, does not constitute the crime of resisting arrest." State v. Raines (1997), 124 Ohio App.3d 430, 432, citing Statev. Bradley (Mar. 11, 1993), 10th Dist. No. 92AP-1496, 1993 Ohio App. LEXIS 1407; see, also, In re Mason (May 21, 1999), 10th Dist. No. 90Ap-217, 1991 Ohio App. LEXIS 2427, at *6; State v. McCullough (1990),61 Ohio Misc.2d 607, 610.
 {¶ 36} In Mason, a police officer was searching for suspects that matched the description of two robbery suspects. While looking for the suspects, the officer observed the defendant and a friend walking near a retail store. The defendant and his friend matched the description of the robbery suspects, so the officer got out of his crusier and yelled "stop" to the defendant. The defendant, along with his friend, stopped walking and ran away from the officer into a store. The officer apprehended the defendant inside the store; the defendant was cooperative and gave no resistance when detained by the police officer. The defendant was charged and convicted of resisting arrest. The appellate court disagreed. It found that there was no probable cause for the officer to make an arrest and that the defendant simply "ran from a possible Terry-like investigatory stop[.]" Mason, 1991 Ohio App. LEXIS, at *3. The officer did not tell the defendant that he was under arrest, nor did the officer attempt to effect an arrest. Therefore, the Mason court held that the defendant could not be guilty of resisting arrest. Id. at *6.
 {¶ 37} The present case is distinguishable from Mason. Here, Appellant was actually stopped and a pat down was conducted. The defendant in Mason was never subjected to a pat down. The defendant ran before the officer could perform a pat down, and thus the officer did not have probable cause to arrest. Here, Appellant actually prevented the officer from completing a pat down. Once Appellant ran, he gave Office Palmer probable cause to arrest Appellant for obstructing official business. Moreover, when he was stopped after being tackled by a bystander, he continued to struggle once Officer Palmer tried to handcuff him between the two homes on Washington Avenue. Consequently, we find that there was sufficient evidence for the jury to find that Appellant was resisting arrest after he was tackled by the bystander and when Officer Palmer attempted to restrain Appellant's arms.
 {¶ 38} Finally, this Court finds that there was sufficient evidence for the jury to find Appellant guilty of obstructing official business. Officer Palmer stated that immediately after he felt something like "crinkled paper" in Appellant's pants pocket, Appellant started to "push off" the police cruiser. Appellant then attempted to flee, and in doing so he engaged in a brief scuffle with Officer Palmer. When Appellant ran, he prevented Officer Palmer from ascertaining what was contained in his pants pocket. Thus, by wrestling with Officer Palmer and fleeing, Appellant effectively "hamper[ed] or impede[d] a public official in the performance of the public official's [.]" R.C. 2921.31(A)
 {¶ 39} The record also indicates that when Appellant was attempting to flee he caused a "risk of physical harm" to Officer Palmer. R.C.2921.31(B). That is, when Officer Palmer fell to the ground as he was attempting to restrain Appellant, there was a significant possibility that Officer Palmer could have suffered physical harm that could result in pain. In fact, Officer Palmer testified that his wrist was aching the day after the arrest.
 {¶ 40} In sum, this Court finds that there was more than enough evidence for the jury to find that Appellant was guilty of resisting arrest, obstructing official business, and trafficking in marijuana, with the additional finding that Appellant was trafficking in marijuana within the vicinity of a school premises. Appellant's assignment of error is not well taken.
 Assignment of Error Number Two
"The trial court erred in denying appellant's motion for mistrial based upon evidence that two of the jurors may have seen appellant in handcuffs in the hallway of the courthouse."
 {¶ 41} In Appellant's second assignment of error, he has argued that trial court erred in denying his motion for a mistrial when it learned that two of the jurors possibly saw Appellant in handcuffs in the courthouse. This Court disagrees.
 {¶ 42} This Court notes that "[m]istrials need be declared only when the ends of justice so require and a fair trial is no longer possible." State v. Franklin (1991), 62 Ohio St.3d 118, 127. It is within the trial court's discretion to grant or deny a motion for a mistrial made pursuant to Crim.R. 33. State v. Sage (1987), 31 Ohio St.3d 173,182. An appellate court must defer to the judgment of the trial court because the trial court is in the best position to determine whether the circumstances warrant granting a motion for a mistrial. State v. Glover
(1988), 35 Ohio St.3d 18, 19, citing State v. Widner (1981),68 Ohio St.2d 188, 190. Accordingly, an appellate court will not disturb a trial court's decision granting or denying a motion for a mistrial unless it constitutes an abuse of discretion. State v. Treesh (1990),90 Ohio St.3d 460, 480, certiorari denied (2001), 533 U.S. 904,121 S.Ct. 2247, 150 L.Ed.2d 234. An abuse of discretion is more than an error of judgment, but instead connotes a decision that is unreasonable, arbitrary, or unconscionable. Blakemore v. Blakemore (1983),5 Ohio St.3d 217, 219. When applying the abuse of discretion standard, an appellate court may not substitute its judgment for that of the trial court. Berk v. Matthews (1990), 53 Ohio St.3d 161, 169.
 {¶ 43} In the instant matter, Appellant has contended that his client was prejudiced when two jurors possibly saw him sitting in the hallway of the courthouse in handcuffs and that the trial court erred when it denied his motion for acquittal.
 {¶ 44} The record reveals that Appellant moved for a mistrial outside the hearing of the jury. Trial counsel stated:
"If it please[s] the Court, Your Honor, at this time I feel compelled to move for a mistrial. Apparently, during the one of the breaks, Your Honor, my client had asked to use the restroom. Unknowingly, he was transported into the hallway, and I noted that there were two jurors present. One appeared to be on the pay phone in the hallway, and the other was on her cell phone. I do not know what they saw, but, obviously, my client would have been in cuffs at the time.
"I'm concerned, Your Honor, that the jury may be unduly prejudiced as to two of the jurors seeing my client removed from the courtroom in handcuffs; and I would move for a mistrial at this time." P 237-238
 {¶ 45} The trial court responded that "[i]n light of the fact that it's uncertain whether this will have an impact and the minimal intrusion, I'm going to deny the motion for mistrial."
 {¶ 46} After reviewing the record this Court does not find that the trial court's decision to deny Appellant's motion for a mistrial was unreasonable or arbitrary. Defense counsel admitted that he was not certain the jurors saw his client sitting in handcuffs. Thus, it was possible that the jurors did not see Appellant in handcuffs. Even if two jurors did view Appellant in handcuffs, it appears that that the observation did not last for an extended period of time. The trial court also observed Appellant handcuffed in plain view of the two jurors. The trial court stated that he believed the jurors "were both busy in a [phone call]" while Appellant sat handcuffed in the hallway. This Court has previously noted that "Ohio courts have held that `the danger of prejudice to defendants is slight where a juror's view of defendants in custody is brief, inadvertent, and outside of the courtroom.'"State v.Anderson (June 16, 1999), 9th Dist. No. 19162, at 10, appeal not allowed (1999), 87 Ohio St.3d 1418, citing State v. Powers (1995),106 Ohio App.3d 696, 700; State v. Talley (Apr. 24, 1996), 9th Dist. No. 95CA0060, at 3, citing State v. Kidder (1987), 32 Ohio St.3d 279,285-286.
 {¶ 47} In addition, the record indicates that Appellant's trial counsel declined to have the trial court give the jury a limiting instruction to cure any prejudice that may have resulted from the two jurors observing Appellant handcuffed. Defense counsel stated: "My concern, Your Honor, is that a curative instruction would simply exacerbated the situation." The trial court, therefore, gave a general instruction to the jury. It instructed the jury to "[c]onsider all the evidence, and make your findings with intelligence and impartiality, and without bias, sympathy, or prejudice, so that the State of Ohio and [Appellant] will feel that their case was fairly and impartially tried." Jurors are presumed to follow the trial court's instructions. Pang v.Minch (1990), 53 Ohio St.3d 186, paragraph four of the syllabus. Therefore, this Court finds that any prejudice to Appellant was cured with such an instruction. Accordingly, Appellant's assignment of error is not well taken.
 III {¶ 48} Appellant's assignments of errors are overruled. The judgment of the trial court is affirmed.
Judgment affirmed.
Carr, P.J. and Batchelder, J., concur.