[Cite as *State v. Nodal*, 2024-Ohio-2473.]

| STATE OF OHIO | ) | | IN THE COURT OF APPEALS |
|---|---|---|---|
| | )ss: | | NINTH JUDICIAL DISTRICT |
| COUNTY OF LORAIN | ) | | |

| STATE OF OHIO | | C.A. No. 22CA011862 |
|---|---|---|
| Appellee | | |
| v. | | APPEAL FROM JUDGMENT ENTERED IN THE |
| REUBEN A. NODAL | | LORAIN MUNICIPAL COURT COUNTY OF LORAIN, OHIO |
| Appellant | | CASE No. 20CRB0746 |

DECISION AND JOURNAL ENTRY

Dated: June 28, 2024

FLAGG LANZINGER, Judge.

{¶1} Defendant-Appellant, Reuben Nodal, appeals from the judgment of the Lorain Municipal Court. This Court affirms.

I.

{¶2} Nodal's brother is a combat veteran who suffers from PTSD. When triggered, he can exhibit paranoia and verbal aggression. One afternoon, Nodal received a frantic call from his brother. The brother said the police officer who lived next door to him had "called his boys * * *." He asked Nodal to come over and pick up his son (i.e., Nodal's nephew). Nodal immediately left his home and drove to his brother's house.

{¶3} Nodal knew his brother and his brother's next-door neighbors had been involved in several, recent confrontations. About a month and a half before this incident, Nodal spoke with the police captain in his brother's jurisdiction. He alerted the captain that his brother struggled with PTSD and was having issues with his neighbors. He also alerted the captain that the sight of

uniformed officers could escalate any PTSD-related symptoms his brother might be experiencing. In response to Nodal's call, the captain emailed the members of his department. He shared Nodal's concerns. He also shared Nodal's request that, if possible, he be phoned to assist with any issues that might arise with his brother.

{¶4} When Nodal arrived at his brother's house, two officers were already on scene. Those two officers were speaking with the next-door neighbors. Nodal went inside his brother's house and spent between thirty and forty-five minutes with him. More officers arrived while he was inside the house. During that same time, Nodal exchanged numerous text messages with an officer on scene. The officer learned that the brother possessed firearms and had a two year old inside the house. The officer repeatedly told Nodal the police needed to speak with his brother outside, but Nodal did not want his brother to leave the house. He suggested alternative forms of electronic communication that would allow his brother to remain inside. The officer stressed that the brother needed to come outside.

{¶5} Unbeknownst to Nodal, the police had already authorized charges against his brother. The officer who was communicating with Nodal did not share that information due to safety concerns. When she reiterated that the police just wanted to talk to the brother, Nodal agreed to come outside. He opened the door to the house and came outside alone.

{¶6} Nodal advanced to the driveway to speak with a lieutenant on scene. He quickly observed officers crouched nearby the house, however, and began yelling at them. His brother then emerged from the house. According to Nodal, the police charged in to secure his brother and, in doing so, they shoved him and put their hands on him. According to multiple officers on scene, Nodal tried ushering his brother back inside and used his body as a barrier to prevent them from gaining entry. The police quickly secured the brother without incident, but Nodal began screaming

and flailing. Several officers attempted to escort him outside as he fought against them. When the officers began losing their grip on Nodal, a third officer used the dry stun feature on his taser to help subdue him.

{¶7} Nodal was charged with obstructing official business and resisting arrest. A jury found him not guilty of obstructing official business. It found him guilty of resisting arrest. The trial court sentenced him to thirty days in jail. Nodal received one day of jail-time credit, and the court suspended the remainder of his sentence. The court ordered him to pay his court costs and court-appointed attorney fees. It stayed the execution of his sentence for purposes of this appeal.

{¶8} Nodal now appeals from his conviction and raises three assignments of error for our review. For ease of analysis, we combine his first and second assignments of error.

## II.

### ASSIGNMENT OF ERROR I

THE TRIAL COURT FAILED TO INSTRUCT THE JURY TO CONSIDER ALL OF THE ELEMENTS OF RESISTING A WARRANTLESS ARREST AS PRESCRIBED BY THE OHIO JURY INSTRUCTIONS AND PROPOSED BY TRIAL COUNSEL.

### ASSIGNMENT OF ERROR II

TRIAL COUNSEL WAS INEFFECTIVE BY FAILING TO OBJECT TO THE TRIAL COURT'S JURY INSTRUCTIONS OMITTING KEY ELEMENTS OF RESISTING A LAWFUL WARRANTLESS ARREST.

{¶9} In his first assignment of error, Nodal argues the trial court erred when it failed to instruct the jury on all the elements of resisting arrest. In his second assignment of error, he argues he received ineffective assistance of counsel because his attorney did not object when the trial court failed to properly instruct the jury. For the following reasons, we reject his arguments.

{¶10} A person commits the crime of resisting arrest if he, "recklessly or by force, [] resist[s] or interfere[s] with a lawful arrest of the person or another." R.C. 2921.33(A). "A lawful

arrest is an essential element of the crime of resisting arrest." *State v. Vactor*, 9th Dist. Lorain No. 02CA008068, 2003-Ohio-7195, ¶ 34. "'An arrest is 'lawful' if the surrounding circumstances would give a reasonable police officer cause to believe that an offense has been or is being committed.'" *State v. Wigle*, 9th Dist. Summit No. 25593, 2011-Ohio-6239, ¶ 11, quoting *State v. Sansalone*, 71 Ohio App.3d 284, 285-286 (1st Dist.1991). "The state need not prove that the defendant was in fact guilty of the offense for which the arrest was based when proving the element of lawful arrest." *Vactor* at ¶ 34.

{¶11} When instructing the jury on resisting arrest, the trial court stated the following:

The defendant[] also been charged with the allegation of resisting arrest. Again, this alleges that on or about the 25th day of July, 2020, in the city and county of Lorain, Ohio, the defendant, Reuban Nodal, recklessly or by force resisted or interfered with the lawful arrest of himself.

"Force" means any violence, compulsion, or constraint physically incurred by any means upon any person or any thing.

"Resist or interfere" means to oppose, obstruct, hinder, impede, interrupt, or prevent an arrest by a law enforcement officer by the use of force or recklessly by any means, such as going limp, or any other passive or indirect conduct.

"Arrest" means any intent to arrest; under real or pretended authority; accompanied by actual constructive seizure or detention of that person; and which is so understood by that person being arrested.

"Lawful arrest" means you must decide whether the arrest was, in fact, lawful.

"Warrantless arrest." An arrest is lawful if the offense for which the arrest was being made was one for which a defendant could be arrested.

Nodal did not object to the trial court's instructions.

{¶12} Nodal argues the trial court erred when it instructed the jury on the lawful arrest element of resisting arrest. That is because the trial court did not tell the jury that an arrest is lawful if, under the surrounding circumstances, a reasonable police officer could have believed an offense had been or was being committed. Nodal argues his arrest was unlawful because no reasonable

police officer could have concluded that he was obstructing official business. According to Nodal, had the jury been properly instructed, the result of his trial would have been different.

{¶13} Nodal acknowledges that his attorney did not object to the jury instructions. Although he has set forth claims of plain error and ineffective assistance of counsel, he also argues that his attorney preserved this issue for appeal. He notes that his attorney filed proposed jury instructions before trial. The proposed instructions defined "lawful arrest" in the manner Nodal believes that element ought to have been defined. According to Nodal, the filing of the proposed instructions preserved this issue for appeal despite the lack of an objection at trial.

{¶14} In general, a party who fails to object to jury instructions forfeits all but plain error on appeal. *State v. Fry*, 9th Dist. Medina No. 16CA0057-M, 2017-Ohio-9077, ¶ 20. Crim.R. 30(A) requires parties to object to alleged errors in the instructions "before the jury retires to consider its verdict, stating specifically the matter objected to and the grounds of the objection." In certain instances, however, a formal objection may not be required to preserve a jury instruction issue. *See, e.g.*, *State v. Claren*, 9th Dist. Wayne No. 19AP0015, 2020-Ohio-615, ¶ 23.

> [I]n a criminal case, where the record affirmatively shows that a trial court has been fully apprised of the correct law governing a material issue in dispute, and the requesting party has been unsuccessful in obtaining the inclusion of that law in the trial court's charge to the jury, such party does not waive his objections to the court's charge by failing to formally object thereto.

*State v. Wolons*, 44 Ohio St.3d 64, 67 (1989).

{¶15} This Court questions whether Nodal preserved his jury instruction argument for appeal. He filed proposed instructions two months before trial. His instructions consisted of twenty-one, single-spaced pages. They touched on a wide array of topics including the elements of several affirmative defenses and several lesser-included offenses. At trial, the parties and the trial court only had one discussion about the proposed instructions. The topic of that discussion

was Nodal's affirmative defenses. There was no discussion about the elements of his offenses. At no point did Nodal bring to the trial court's attention any potential issue with its instructions on resisting arrest. Thus, it is debatable whether he "fully apprised" the court of the correct law "governing a material issue in dispute * * *." *Id.* Assuming without deciding that he preserved this issue for appeal, however, we cannot conclude that he has shown he is entitled to relief.

{¶16} Even if a trial court fails to instruct the jury on an essential element of an offense, we must determine whether the court's error "was harmless or whether it affected the outcome of the proceedings." *City of Akron v. Sage*, 9th Dist. Summit No. 28834, 2018-Ohio-3662, ¶ 7. "[T]he error is harmless if the 'omitted element is supported by uncontroverted evidence * * *." *State v. Meinke*, 9th Dist. Lorain Nos. 15CA010738, 15CA010739, 2017-Ohio-7787, ¶ 20, quoting *Neder v. United States*, 527 U.S. 1, 18 (1999).

{¶17} Lieutenant Tabitha Angelo testified that she responded to a home on Magnolia Drive after its residents reported an assault. She knew Nodal's brother lived next door and had been implicated in the assault. A few weeks earlier, she had received an email about the brother from her captain. She also knew Nodal personally and was friends with his parents. As she responded to the scene, she texted Nodal to tell him that officers were heading to his brother's house. He quickly responded that he was already on his way.

{¶18} Lieutenant Angelo and other officers first met with the brother's next-door neighbors. They gathered information and decided to arrest the brother for aggravated menacing, criminal trespass, and assault. At that point, the brother was inside his house with Nodal. Lieutenant Angelo exchanged numerous messages with Nodal. She repeatedly notified him that the police needed to speak with his brother. Nodal initially said he did not want his brother to speak with the police because his brother was triggered. He eventually asked whether it would be

possible for his brother to speak with Lieutenant Angelo through the Ring camera or FaceTime. As Lieutenant Angelo continued to try to get the brother outside, she learned that he had legal firearms inside the house along with his two-year-old son. She told Nodal that she needed him to come outside with his nephew, but Nodal indicated the child was sleeping. Nodal asked Lieutenant Angelo to come inside, but she maintained that it was impossible for her to come inside alone or position herself on the porch to use the Ring camera. She once again told Nodal to take his brother outside. Nodal responded by asking if his brother was going to be safe. He also asked: "What's your goal? Just to talk or take him in?" When Lieutenant Angelo replied that the police wanted to talk, Nodal agreed he would open the door.

{¶19} Lieutenant Angelo testified that, for safety reasons, she did not tell Nodal the police intended to arrest his brother. She feared sharing that information would cause the situation to escalate further. Although Nodal responded to her text messages, she did not believe that he acted in a helpful or cooperative manner. She estimated that she spent well over thirty minutes exchanging messages with him as he repeatedly offset her efforts to get his brother outside.

{¶20} Several officers testified about Nodal's actions when he finally opened the door to his brother's house and came outside. Lieutenant Corey Middlebrooks was positioned in the driveway, just behind Nodal's parked car. Meanwhile, Officers Gino Taliano, Joshua Roberts, and Brendin Velez were positioned at the front, right corner of the house. Lieutenant Middlebrooks recalled Nodal walking toward him and stopping about thirty to fifty feet from the front door. Nodal began speaking before he noticed the officers waiting at the corner of the house. At that point, he began yelling at the officers. Lieutenant Middlebrooks testified that he was trying to convince Nodal to talk to him when the brother took a few steps outside. He and the surrounding officers all testified that Nodal turned his attention to his brother. Nodal repeatedly yelled at his

brother to run back inside while frantically motioning with his arms and moving back in that direction.

{¶21} Lieutenant Middlebrooks testified that he saw the brother moving back inside the house and hurried to stop him. As he rushed forward to secure the brother, the other officers followed. The lieutenant found the brother to be very cooperative. He was able to approach him and handcuff him without incident. Because he was so focused on the brother, Lieutenant Middlebrooks did not recall how Nodal acted from the time he (the lieutenant) hurried inside and the time he handcuffed the brother. Once he secured the brother, however, the lieutenant noticed Nodal was still yelling. He instructed the other officers to remove Nodal from the vicinity. Afterwards, he learned that Nodal had put his hands on the other officers and had tried to prevent them from coming inside.

{¶22} Officer Roberts was the first officer to enter the house behind Lieutenant Middlebrooks. He testified that the lieutenant had to push past Nodal to reach the brother. Nodal then tried to stop Officers Roberts, Taliano, and Velez from entering. Officers Roberts and Taliano testified that Nodal yelled at them, put his hands on them, and actively put his body between them and his brother. The officers had to push Nodal aside to reach Lieutenant Middlebrooks. Officer Roberts testified that Nodal's behavior created a safety issue because it caused the officers to split their focus and divert resources to address his behavior.

{¶23} When Lieutenant Middlebrooks gave the command to remove Nodal from the vicinity, Officer Velez grabbed him. Officer Velez testified that Nodal continued screaming and began flailing and kicking. Officer Taliano offered his assistance, and the two officers managed to bring Nodal outside. When they tried handcuffing him, he refused to hold still. Officer Velez testified that Nodal was moving his arms and kicking his legs so much that they were losing their

grip on him. Officer Velez cautioned Nodal that he would be tased if he continued to struggle, but Nodal did not listen. Officer Mark Pultrone then came to their aid and used his taser gun in a dry stun fashion to subdue Nodal. He testified that he subdued Nodal because he appeared to be breaking free from Officer Velez and Officer Taliano's grasp.

{¶24} Nodal testified in his own defense. He testified that, when he arrived at his brother's house, he only saw two police officers next door. He spent time helping his brother de-escalate while remaining in contact with Lieutenant Angelo. According to Nodal, he did not know the police wanted to arrest his brother. Nor did he know how many officers had responded to the scene. When he came outside, he reacted to the presence of so many officers because it looked like they "were getting ready to SWAT [his] brother's house."

{¶25} Nodal testified that he "technically" never told his brother to go back inside. He only told him to stay where he was so he could analyze the situation. Nodal claimed he was still doing so when Lieutenant Middlebrooks whistled and signaled the other officers to move in. He was then swept inside the house in "kind of a hurricane of officers * * *." Nodal testified that, when the officers touched him, they triggered his own PTSD. He then went into "full flight or fight mode * * *." He acknowledged that multiple officers became involved because they could not keep hold of him. Even so, he denied having resisted arrest. He testified that he was "just trying to regain autonomy over [his] body * * *." He also claimed the arrest was an unlawful one. He testified that, had the police told him they wanted to arrest his brother, he would have helped them facilitate the arrest.

{¶26} Having reviewed the record, we cannot conclude that any error the trial court made in defining the lawful arrest element for the jury affected the outcome of the proceedings. *See Sage*, 2018-Ohio-3662, at ¶ 7. The State set forth uncontroverted evidence that Nodal resisted the

initial efforts the police made to have face-to-face contact with his brother. It also set forth uncontroverted evidence that, once Nodal was outside, he yelled at the police, encouraged his brother not to come outside, and briefly hampered their efforts to gain entry to the house. Several officers testified that he stood in their way and acted as a barrier. Those same officers testified that he screamed at them, flailed his arms, kicked, and made it very difficult to remove him from the vicinity. While Nodal insisted that he was merely trying to "regain autonomy over [his] body," he admitted that he yelled, flailed, and made it difficult for officers to hold him. Even if his personal motives were altruistic or unintentionally harmful, a reasonable officer could have concluded that he was trying to hamper the police in the performance of their lawful duties. *See* R.C. 2921.31(A). The fact that the jury acquitted him of obstructing official business is inapposite. "[J]uries are not required to reach consistent verdicts between separate counts." *State v. Singh*, 9th Dist. Summit No. 28819, 2018-Ohio-3473, ¶ 15. Moreover, to secure a conviction for resisting arrest, the State did not need to prove Nodal was in fact guilty of obstructing official business. *See Vactor*, 2003-Ohio-7195, at ¶ 34. The record supports the conclusion that any error the trial court made when instructing the jury on the lawful arrest element was harmless beyond a reasonable doubt. *See Sage* at ¶ 7. Accordingly, Nodal's first assignment of error is overruled.

{¶27} Nodal also argues that he received ineffective assistance of counsel when his attorney failed to object to the trial court's lawful arrest instruction. To establish prejudice in an ineffective assistance of counsel claim, an appellant must show that there existed a reasonable probability that, but for his counsel's errors, the outcome of the proceeding would have been different. *State v. Sowell*, 148 Ohio St.3d 554, 2016-Ohio-8025, ¶ 138. We have already determined that any error the trial court made in its lawful arrest instruction was harmless beyond a reasonable doubt. Accordingly, Nodal "'cannot show the necessary prejudice required to support

an ineffective assistance of counsel claim.'" *State v. Taylor*, 9th Dist. Summit No. 27867, 2016-Ohio-3439, ¶ 20, quoting *State v. Blankenship*, 9th Dist. Summit No. 16019, 1993 WL 329962, *4 (Sept. 1, 1993). Nodal's second assignment of error is overruled.

## ASSIGNMENT OF ERROR III

TRIAL COUNSEL WAS INEFFECTIVE BY FAILING TO PRESENT A DEFENSE AND ARGUE TO THE JURY THAT THE ARRESTING POLICE OFFICERS HAD NO PROBABLE CAUSE TO BELIEVE THAT APPELLANT COMMITTED OBSTRUCTION OF OFFICIAL BUSINESS.

{¶28} In his third assignment of error, Nodal argues he received ineffective assistance of counsel because his attorney did not present a defense regarding his charge of resisting arrest. According to Nodal, his attorney should have advanced and argued the theory that officers lacked probable cause to lawfully arrest him. For the following reasons, we reject his argument.

{¶29} To prevail on a claim of ineffective assistance of counsel, an appellant must establish: (1) that his counsel's performance was deficient to the extent that "counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment[;]" and (2) that "the deficient performance prejudiced the defense." *Strickland v. Washington*, 466 U.S. 668, 687 (1984). A deficient performance is one that falls below an objective standard of reasonable representation. *State v. Bradley*, 42 Ohio St.3d 136 (1989), paragraph two of the syllabus. To establish prejudice, an appellant must show that there existed a reasonable probability that, but for his counsel's errors, the outcome of the proceeding would have been different. *Sowell* at ¶ 138.

{¶30} Nodal argues his only defense to resisting arrest was that his arrest was unlawful. Therefore, he insists his attorney was obligated to set forth evidence and argue that officers lacked probable cause to arrest him. He claims the police were aware of his intentions and efforts to de-escalate any potential incidents involving his brother. They also were aware that he was in a relationship with a police officer from their department and had prior interactions with various

members of their department. Nevertheless, Nodal argues, his attorney did not cross-examine the officers who testified about "the reasonableness of their interpretations of [his] actions" that day. He argues that he was the only one who explained the thought process behind his actions to the jury. According to Nodal, had his attorney effectively argued that officers lacked probable cause to lawfully arrest him, there is a reasonable probability the jury would have acquitted him of resisting arrest.

{¶31} Assuming without deciding that Nodal's counsel engaged in a deficient performance, we cannot conclude that it prejudiced the outcome of the proceedings. *See Stickland*, 466 U.S. at 687. The jury heard testimony that Nodal was in a relationship with a member of the police department and had a number of personal contacts there. They also heard testimony regarding the proactive efforts he made to alert the department about his brother's diagnosis and offer his services if any issues arose. Yet, his charge stemmed from his actions at the scene, not his relationships, personal motives, or subjective intentions. The jury heard testimony that he resisted the initial efforts the police made to have face-to-face contact with his brother. They heard testimony that, when he finally came outside, Nodal began yelling at officers and tried to stop his brother from coming outside. They heard testimony that he kept his body between the officers and his brother as they entered the house and immediately began screaming. Finally, they heard testimony that he flailed his arms, kicked his legs, and actively resisted their efforts to hold onto him and remove him from the vicinity. As noted, when viewing the circumstances objectively, a reasonable officer could have concluded that Nodal was trying to hamper the police in the performance of their lawful duties. *See* Discussion, *supra*, citing R.C. 2921.31(A). Nodal has not shown that, had his attorney advanced additional arguments regarding the lawfulness of his arrest, there is a reasonable probability the outcome of the proceedings would have been different. *See*

*Sowell*, 148 Ohio St.3d 554, 2016-Ohio-8025, at ¶ 138. Accordingly, his third assignment of error is overruled.

## III.

{¶32} Nodal's assignments of error are overruled. The judgment of the Lorain Municipal Court is affirmed.

Judgment affirmed.

———

There were reasonable grounds for this appeal.

We order that a special mandate issue out of this Court, directing the Lorain Municipal Court, County of Lorain, State of Ohio, to carry this judgment into execution. A certified copy of this journal entry shall constitute the mandate, pursuant to App.R. 27.

Immediately upon the filing hereof, this document shall constitute the journal entry of judgment, and it shall be file stamped by the Clerk of the Court of Appeals at which time the period for review shall begin to run. App.R. 22(C). The Clerk of the Court of Appeals is instructed to mail a notice of entry of this judgment to the parties and to make a notation of the mailing in the docket, pursuant to App.R. 30.

Costs taxed to Appellant.

JILL FLAGG LANZINGER
FOR THE COURT

HENSAL, J.
CONCURS.

CARR, P. J.
<u>DISSENTING.</u>

{¶33} I respectfully dissent. Given that Nodal was acquitted of the obstruction charge, I would focus the analysis primarily on the facts that were pertinent to the charge of resisting arrest when analyzing the validity of the trial court's jury instructions. Understanding the factual context is critical in this case. Nodal had established a relationship with police regarding his brother's struggles and he was communicating electronically with police throughout the course of the incident. When Nodal exited the house, he was unaware that charges against his brother had already been authorized. Based on his communications with police, Nodal was under the impression that the officers just wanted to speak with his brother. Accordingly, during the raucous events that followed, it is plausible to assume that Nodal was operating with the mindset that he was an intermediary between his brother and the police. Under these circumstances, I would hold that the trial court's failure to properly define "lawful" arrest when instructing the jury resulted in prejudice to Nodal. I would sustain the first assignment of error.

<u>APPEARANCES:</u>

STEPHEN P. HANUDEL, Attorney at Law, for Appellant.

ROCKY R. RADEFF, Attorney at Law, for Appellee.