DECISION AND JOURNAL ENTRY
{¶ 1} Appellant, Deforest Flowers, appeals from his convictions in the Lorain County Court of Common Pleas. This Court affirms.
 I. {¶ 2} On July 24, 2002, appellant was indicted on one count of theft, in violation of R.C. 2913.02(A)(1), a fifth degree felony, and one count of contributing to unruliness or delinquency of a child, in violation of R.C. 2919.24, a first degree misdemeanor. Appellant pled not guilty to these charges. On June 6, 2003, the State filed a motion to consolidate appellant's case with that of Angela Groce-Hopson, who was charged with identical crimes arising out of the same incident. On June 12, 2003, the trial court granted the State's motion and consolidated the cases for a jury trial. Subsequently, the jury convicted appellant of one count of complicity in the commission of theft, and one count of contributing to the unruliness or delinquency of a child. The trial court sentenced appellant accordingly.
 {¶ 3} Appellant timely appealed, setting forth three assignments of error for review. This Court addresses appellant's first and second assignments of error together, to facilitate review.
 II. ASSIGNMENT OF ERROR I
"[T]he trial court erred to the prejudice of appellant in violation of criminal rule 29 Article 1 Section 10 of the Ohio consitution and the due process clause of constitution of the United States when it denied appellant[']s motion for aquittal."
 ASSIGNMENT OF ERROR II
"The trial court erred to the prejudice of appellant when it entered judgment of conviction, where such judgment was against the manifest weight of the evidence."
 {¶ 4} In his first and second assignments of error, appellant avers that the trial court erred in denying his Crim.R. 29 motion for acquittal and that his conviction was against the manifest weight of the evidence. This Court disagrees.
 {¶ 5} As a preliminary matter, this Court observes that sufficiency of the evidence and weight of the evidence are legally distinctive issues. State v. Thompkins,78 Ohio St.3d 380, 386.
 {¶ 6} Crim.R. 29(A) provides that a trial court "shall order the entry of a judgment of acquittal * * * if the evidence is insufficient to sustain a conviction of such offense or offenses." A trial court may not grant an acquittal by authority of Crim.R. 29(A) if the record demonstrates that reasonable minds can reach different conclusions as to whether each material element of a crime has been proved beyond a reasonable doubt.State v. Wolfe (1988), 51 Ohio App.3d 215, 216. In making this determination, all evidence must be construed in a light most favorable to the prosecution. Id. "In essence, sufficiency is a test of adequacy." Thompkins, 78 Ohio St.3d at 386.
 {¶ 7} "While the test for sufficiency requires a determination of whether the State has met its burden of production at trial, a manifest weight challenge questions whether the State has met its burden of persuasion." State v.Gulley (Mar. 15, 2000), 9th Dist. No. 19600, Thompkins,78 Ohio St.3d at 390 (Cook, J., concurring). When a defendant asserts that his conviction is against the manifest weight of the evidence,
"an appellate court must review the entire record, weigh the evidence and all reasonable inferences, consider the credibility of witnesses and determine whether, in resolving conflicts in the evidence, the trier of fact clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered." State v. Otten (1986),33 Ohio App.3d 339, 340.
 {¶ 8} This discretionary power should be invoked only in extraordinary circumstances when the evidence presented weighs heavily in favor of the defendant. Id.
 {¶ 9} Sufficiency of the evidence is required to take a case to the jury; therefore, a finding that a conviction is supported by the weight of the evidence necessarily includes a finding of sufficiency. State v. Roberts (Sept. 17, 1997), 9th Dist. No. 96CA006462. "Thus, a determination that [a] conviction is supported by the weight of the evidence will also be dispositive of the issue of sufficiency." Id.
 {¶ 10} In the present case, appellant was convicted of one count of complicity in the commission of theft, and one count of contributing to the unruliness or delinquency of a child. The charges were based on an incident at a Target department store in Avon, Ohio.
Complicity to Commit Theft
 {¶ 11} R.C. 2913.02(A)(1) states:
"No person, with purpose to deprive the owner of property or services, shall knowingly obtain or exert control over either the property or services in any of the following ways: Without the consent of the owner or person authorized to give consent."
 {¶ 12} R.C. 2923.03 provides, in relevant part, that one is "guilty of complicity in the commission of an offense" if, while "acting with the kind of culpability required for the commission of an offense," he "aid[s] or abet[s] another in committing the offense."
 {¶ 13} In his first and second assignments of error, appellant contends that the State's evidence did not establish that he independently had the requisite mental state to support his convictions.
 {¶ 14} Knowingly is defined as:
"A person acts knowingly, regardless of his purpose, when he is aware that his conduct will probably cause a certain result or will probably be of a certain nature. A person has knowledge of circumstances when he is aware that such circumstances probably exist." R.C. 2901.22(B).
 {¶ 15} When the defendant's culpable mental state is in issue, the proof of a mental state must be derived from circumstantial evidence, as direct evidence will not be available. State v. Ray (Dec. 22, 1993), 9th Dist. No. 16050, citing State v. Lott (1990), 51 Ohio St.3d 160, 168.
 {¶ 16} It is well settled that the State may rely on circumstantial evidence to prove an essential element of an offense, as "circumstantial evidence and direct evidence inherently possess the same probative value[.]" State v. Smith
(Nov. 8, 2000), 9th Dist. No. 99CA007399, quoting State v.Jenks (1991), 61 Ohio St.3d 259, at paragraph one of the syllabus. "Since circumstantial evidence and direct evidence are indistinguishable so far as the jury's fact-finding function is concerned, all that is required of the jury is that it weigh all of the evidence, direct and circumstantial, against the standard of proof beyond a reasonable doubt." Jenks,61 Ohio St.3d at 272. While inferences cannot be based on inferences, a number of conclusions can result from the same set of facts. Lott,51 Ohio St.3d at 168, citing Hurt v. Charles J. Rogers Transp. Co.
(1955), 164 Ohio St. 329, 331-34. Thus, the jury may employ a series of facts or circumstances as the basis for its ultimate conclusion. Lott, 51 Ohio St.3d at 168.
 {¶ 17} At appellant's trial, former Target employee Jennifer Beaton testified on behalf of the State. Beaton testified that on May 25, 2002, she was working as a guest services cashier when she heard the electronic alarm and saw a boy pushing a cart out of the store's entrance door. Upon stepping outside to investigate, she saw the boy "throwing the items into the trunk" of a car and noted that none of the merchandise was in shopping bags as would be ordinary for purchases. Beaton further testified that she called store security personnel, identified the car she had seen, and observed the boy hiding in the car. At trial, Ms. Beaton identified appellant and Ms. Groce-Hopson as the two adults with the child at the store that day.
 {¶ 18} Justin Schenker, the Assets Protection Supervisor at the store, also testified for the State. Schenker was in charge of store security, which included monitoring the video surveillance tapes. Schenker testified that at the time in question, he responded to a call from a cashier regarding a suspected theft and one of the cashiers showed him to a green Chevy Malibu, license plate number UC ANGE 2, in which the stolen merchandise had been placed. Schenker testified that he returned to his office and used the outside video monitor to observe appellant enter the car and drive it to a different location in the parking lot before returning to the store. Schenker also testified that, upon reviewing the surveillance video, he discovered that appellant and Ms. Groce-Hopson "entered the store together and they were at guest services several times together" during the evening. During Schenker's testimony, the State also introduced, and the court admitted, the receipt tabulating the merchandise recovered from Ms. Groce-Hopson's car, valued at $2,091.68, and the surveillance video.
 {¶ 19} The surveillance video depicts appellant, Ms. Groce-Hopson, the boy, and a younger girl engaged in various complicit activities. Specifically, appellant and Ms. Groce-Hopson are viewed in the electronics department, each with a partially full shopping cart, perusing the CDs and DVDs, with appellant placing DVDs into the cart on several occasions. At one point, appellant and Ms. Groce-Hopson walk along a DVD display with their backs to the camera. Ms. Groce-Hopson makes three separate gestures towards the display, appearing to touch or pick up a DVD each time as she continues along. Then appellant steps back towards Ms. Groce-Hopson and appears to give her something. When she turns back towards the camera, she is seen holding at least one DVD in her left hand Ms. Groce-Hopson then places the DVD into appellant's cart and returns to her own cart.
 {¶ 20} Later, the video displays the store entrance doors, from the interior of the store. Appellant is seen entering from the outside, triggering the automatic door to open, and effectively holding it open. Meanwhile, the boy pushes a fully loaded shopping cart out through this entrance door. The next sequence, from the exterior camera sweeping the parking lot, shows the boy loading merchandise from a shopping cart into a green Chevy Malibu. Later, the camera zooms in on appellant and the boy emerging from the car before appellant reenters the car and drives out of the picture. Less than one minute later, the video shows appellant and the boy walk towards the Target entrance from the far left side of the parking lot. Inside the store, appellant and the boy proceed to the customer service counter, where appellant waits while the boy heads further into the store. About one minute later, the boy locates Ms. Groce-Hopson in the girls department, pushing a cart full of merchandise. Ms. Groce-Hopson immediately proceeds to the customer service counter, but appellant is no longer there. Outside, the boy is then seen running into the parking lot to catch up with appellant. They enter the car and drive away out of camera range.
 {¶ 21} Approximately seven minutes later, while the camera is on Ms. Groce-Hopson at the customer service counter, appellant enters the store again, this time wearing a different shirt, and proceeds directly to Ms. Groce-Hopson at the counter where he waits with her for a period of time. After appellant leaves, Ms. Groce-Hopson completes her business at the counter, reloads her shopping cart, and then exits.
 {¶ 22} Police officer Dan Fischbach testified for the State as follows. At approximately 5:00 p.m. on May 25, 2002, Officer Fischbach was dispatched to Avon Commons to respond to suspicious activity in the parking lot, but during that time was notified of the suspected shoplifting at the Target. Upon arrival, Officer Fischbach identified appellant and, nearby, the green Chevy Malibu with license plate number UC ANGE 2. Despite some initial misrepresentation, appellant eventually identified himself to Officer Fischbach and stated that he was there with his girlfriend. Officer Fischbach observed the car and discovered Ms. Groce-Hopson's nine-year-old son crouched on the floorboard, hiding from view, as well as some suspected stolen merchandise in plain view. Ms. Groce-Hopson walked up at some point, and after an initial misrepresentation of who she was with, she conceded that she was with appellant. Officer Fischbach checked the vehicle registration and confirmed that the car in question belonged to Ms. Groce-Hopson, who consented to a search of her car. Inside the car were over 100 CDs and DVDs, all in their original packaging, but no receipts or plastic shopping bags that would normally indicate an actual purchase were present. Although they eventually agreed that they were there together, both appellant and Ms. Groce-Hopson denied any knowledge of the items in the car throughout the course of the inquiry. On cross examination, Officer Fischbach conceded that an occasional item may be improperly deactivated and may erroneously trigger the electronic alarm as defense counsel had suggested, but concluded that it would be "highly unlikely" that these 131 items had been improperly deactivated.
 {¶ 23} After a review of the record, it is clear that the jury did not lose its way and create a manifest miscarriage of justice when it found appellant guilty of complicity to commit theft.
Contributing to the Deliquency of a Child
 {¶ 24} R.C. 2919.24(A)(1) provides, in relevant part: "No person * * * shall do any of the following: Aid, abet, induce, cause, encourage, or contribute to a child * * * becoming a * * * delinquent child." R.C. 2901.21(B) provides that culpability is not needed for a person to be guilty of a crime when the section defining the crime does not specify any degree of culpability and plainly indicates the statutory purpose is to impose strict criminal liability. State v. Lozier, 5th Dist. No. 01CA21, 2002-Ohio-1671. The use of the words "no person * * * shall," in R.C. 2919.24(A)(1), without reference to another mental state, indicates its intention to impose strict liability. State v.Stuck, 9th Dist. No. 02CA0071-M, 2003-Ohio-1596, at ¶ 5.
 {¶ 25} Appellant argues that to be convicted under R.C.2919.24(A)(1), appellant would have had to knowingly aid a child in becoming a delinquent child. This argument is without merit.
 {¶ 26} This court has ruled that since R.C. 2919.24(A)(1) does not give a requisite mental state, an offense of this statute is a strict liability offense. Stuck, 2003-Ohio-1596, at ¶ 5. When the section defining an offense does not specify culpability, and plainly indicates an imposition of strict criminal liability for the conduct described in the section, then culpability is not required for a person to be guilty of the offense. City of Dayton v. Brock, 2nd dist. No. CA8565. Stated in another way, strict liability crimes are exceptions to the historical proposition that conduct of a criminal nature flows from an intent to do the prescribed act. See Marrissette v.United States (1952), 342 U.S. 246, 253.
 {¶ 27} Appellant's mental state when he aided the juvenile is irrelevant because a violation of this statute is a strict liability offense. It is enough that appellant aided the juvenile. Therefore, this Court cannot conclude that the jury lost its way and created a manifest miscarriage of justice when it found appellant guilty of contributing to the delinquency of a child.
 {¶ 28} Having found that Appellant's convictions were not against the manifest weight of the evidence, this Court concludes that there was sufficient evidence to support the convictions. See Roberts, supra. Accordingly, appellant's first and second assignments of error are overruled.
 ASSIGNMENT OF ERROR III
"Appellant was deprived of his right to the effective assistance of counsel as guaranteed by the Sixth andFourteenth Amendments to the United States Constitution and Article I, Section 10 of the Ohio Consitution."
 {¶ 29} In his third assignment of error, appellant claims that he was deprived of his right to effective assistance of counsel. This court finds that appellant has failed to meet the first prong of the test set forth in Strickland v. Washington
(1984), 466 U.S. 668, 80 L.Ed.2d 674.
 {¶ 30} In order to establish the existence of ineffective assistance of counsel, the defendant must satisfy a two-pronged test. First, the defendant must show that counsel's representation fell below an objective standard of reasonableness. Id. at 687-688. Second, the defendant must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. Id. at 694.
 {¶ 31} Defendant bears the burden of proof on this matter.State v. Colon, 9th Dist. No. 20949, 2002-Ohio-3985, at ¶ 49, citing State v. Smith (1985), 17 Ohio St.3d 98, 100. Furthermore, there exists a strong presumption of the adequacy of counsel's performance, and that counsel's actions were sound trial tactics. Id. "A strong presumption exists that licensed attorneys are competent and that the challenged action is the product of a sound strategy." State v. Watson (July 30, 1997), 9th Dist. No. 18215. This Court notes that there are many avenues in which counsel can provide effective assistance of counsel in any given case, and debatable trial strategies do not constitute ineffective assistance of counsel. State v. Gales (Nov. 22, 2000), 9th Dist. No. 00CA007541; State v. Clayton (1980),62 Ohio St.2d 45, 49.
 {¶ 32} In the present case, appellant claims that he was denied effective assistance of counsel when his attorney failed to file necessary pre-trial motions, challenge the dismissal of certain African Americans from the jury panel, challenge the admission of certain evidence, specifically the videotape, and finally to properly review and evaluate the videotape. This Court concludes that all the inactions appellant is contesting fall under the purview of trial tactics. Appellant has failed to overcome the presumption that these inactions are part of a sound trial strategy; therefore, appellant's third assignment of error is overruled.
 III. {¶ 33} Appellant's assignments of error are overruled. The judgment of the Lorain County Court of Common Pleas is affirmed.
Judgment affirmed.
The Court finds that there were reasonable grounds for this appeal.
We order that a special mandate issue out of this Court, directing the Court of Common Pleas, County of Lorain, State of Ohio, to carry this judgment into execution. A certified copy of this journal entry shall constitute the mandate, pursuant to App.R. 27.
Immediately upon the filing hereof, this document shall constitute the journal entry of judgment, and it shall be file stamped by the Clerk of the Court of Appeals at which time the period for review shall begin to run. App.R. 22(E). The Clerk of the Court of Appeals is instructed to mail a notice of entry of this judgment to the parties and to make a notation of the mailing in the docket, pursuant to App.R. 30.
Costs taxed to appellant.
Exceptions.
Slaby, J., Boyle, J., Concur.