**[Cite as *In re A.D.*, 2025-Ohio-2349.]**

| STATE OF OHIO | ) | IN THE COURT OF APPEALS |
|---|---|---|
| | )ss: | NINTH JUDICIAL DISTRICT |
| COUNTY OF SUMMIT | ) | |

IN RE: A.D.

C.A. No.     31195

APPEAL FROM JUDGMENT
ENTERED IN THE
COURT OF COMMON PLEAS
COUNTY OF SUMMIT, OHIO
CASE No.     DL 23-10-000909

DECISION AND JOURNAL ENTRY

Dated: July 2, 2025

STEVENSON, Judge.

**{¶1}** Appellant A.D. appeals the disposition of the Summit County Court of Common Pleas, Juvenile Division, that adjudicated her a delinquent child. This Court affirms the trial court's decision.

I.

**{¶2}** A.D. and her mother went to the Summit County Juvenile Court on October 2, 2023, for a scheduled meeting at the court's Family Resource Center ("FRC"). The FRC is a diversionary court agency located on the second floor of the courthouse. The meeting was with case worker Katie Williams and FRC Director Lisa Karas to discuss a truancy referral from A.D.'s school.

**{¶3}** A.D. answered questions at the truancy meeting for about "20 minutes" before she became "uncomfortable" and asked to leave the meeting. Mother remained in the meeting after A.D. left with permission from her case worker and Ms. Karas.

{¶4} Ms. Karas walked A.D. out of the meeting. She asked her administrative assistant, Susan Gatts, to show A.D. the FRC waiting area and she told A.D. "I'd like for you to wait in the waiting area." Instead of waiting in the FRC waiting area, A.D. went down to the first floor of the courthouse. After learning that A.D. had left FRC's waiting area, Ms. Karas instructed Ms. Gatts to call the deputies located at the first-floor security desk. Ms. Gatts informed the answering deputy that they had a "kiddo coming down" and that she needed to go back upstairs.

{¶5} Deputies Steven Scofield and Thomas Fickes were working the security desk. After taking the phone call, Deputy Scofield informed Deputy Fickes that a female juvenile was coming down and that she needed to go back upstairs. Deputy Scofield did not know who had called, but he knew the call was made from within the courthouse and he believed that it was from the judge or a magistrate. Deputy Fickes also believed the call was from the judge or one of the magistrates because, based on his experience, the deputies only receive internal calls made from one of the courtrooms.

{¶6} Deputy Fickes approached A.D. who was sitting on a hallway bench and after asking her name he informed her that she needed to go back upstairs. He testified that A.D. refused to go back upstairs. Deputy Fickes testified that he repeatedly told A.D. that "if the Judge is ordering you into custody, we will have to take you up there." According to Deputy Fickes, A.D. said that she does not "care what the Judge is doing." A.D.'s reference to a judge "reiterated to [Deputy Fickes] [the phone call] was coming from one of the courtrooms."

{¶7} Deputy Fickes left A.D., who was still sitting on the bench, to try and find out which courtroom called the first-floor security desk. He checked with Deputy Scofield who did not know who called and no one answered his phone call to the third-floor reception desk. Deputy Fickes

"ended up going upstairs" where a receptionist "said she was unaware of the case going on, any case going on with [A.D.]."

{¶8} Deputy Fickes went back to the first floor of the courthouse "and again asked Deputy Scofield if he could recall who it was" that called. Deputy Scofield did not know who made the phone call.

{¶9} Deputy Fickes approached A.D. a second time and asked her if she was "in front of a Judge or Magistrate?" According to Deputy Fickes, A.D. responded that she did not know who she had been with that day and she started to get loud and use profanities, telling him to "[g]et the f… away from me[,]" "f… you. You can't stop me[,]" and "f… you guys[.]" Deputy Fickes testified that A.D. "was screaming and swearing" and he described her behavior as "very erratic[.]" At some point, A.D. stood up to leave. A.D. acknowledged that she stood up wanting to possibly "go outside."

{¶10} Deputy Fickes stepped in front of A.D. "as she tried to go around me[.]" In light of A.D.'s "pretty erratic" behavior, Deputy Fickes testified that he was concerned that A.D. was "going to hurt herself or get harmed in some way[.]"

{¶11} Springfield Township Police Officer Austin Branham was standing at a nearby clerk's window to file paperwork in an unrelated matter when he heard the "commotion" between Deputy Fickes and A.D. Officer Branham recalled that, upon entering the courthouse, he overheard the deputies talking about a phone call "indicat[ing] that a Judge of some sort" reported that "a juvenile had run from the courtroom and that the court requested her back upstairs."

{¶12} Officer Branham testified that A.D. responded "[v]ery erratically" when Deputy Fickes told her that she had to go back upstairs. Officer Branham observed A.D. "blading her body" which "[t]o me, indicated that she might try to run past him." Officer Branham was

concerned that A.D. would run out of the courthouse after being told to go back upstairs. He testified that officers "have a special responsibility to take with juveniles[,]" and that if A.D. got away and something happened, "it would ultimately fall on our heads." Deputy Fickes was also concerned about A.D.'s safety should she get away.

{¶13} Deputy Fickes reached for his handcuffs when A.D. "tried to go around me[.]" Once he reached for his handcuffs, Deputy Fickes testified that A.D. "started to swing" her arms, that she was "kicking and screaming," and that she continued using profanities.

{¶14} Officer Branham went and stood behind A.D. once he saw what was going on between A.D. and Deputy Fickes. Deputy Scofield heard A.D. yelling and he also came to help get handcuffs on her. Deputy Fickes, Deputy Scofield and Officer Branham (collectively "the officers") struggled with A.D. as they tried to place her in handcuffs. A.D. kicked Deputy Fickes "several times" in the knee and scratched his arm in the struggle. The courthouse surveillance video corroborates the officers' testimony that A.D. tried to go around Deputy Fickes and that she swung her arms and kicked Deputy Fickes in the struggle. Deputy Scofield's attempted leg sweep on A.D., to "have her fall to the ground softly[,]" was unsuccessful.

{¶15} The officers and A.D. lost their balance and fell in the struggle. A.D. "stopped fighting" once on the ground allowing the officers to place her in handcuffs. A.D. acknowledges the officers did not kick or punch her in the struggle nor did they use mace or a taser.

{¶16} Sergeant Daniel Horba is Deputy Fickes and Deputy Scofield's supervisor and was responsible for investigating the incident. As part of his investigation, Sergeant Horba conducted interviews, took photographs, and reviewed the videos of the incident. Sergeant Horba concluded that A.D. was an uncooperative subject the second time she was approached by Deputy Fickes. Sergeant Horba testified that Deputy Fickes acted within the Summit County Sheriff's policies and

procedures when he sought to detain A.D. as he was "conducting an investigation." He "determined that after reviewing the video [that] the sole cause of the use of force was [A.D.]." Sergeant Horba described the use of force used against A.D. as "[m]ild" and he opined that the deputies' efforts with A.D. were reasonable and complied with the Sheriff Office's use of force policy.

{¶17} A complaint was filed after the incident alleging A.D. is a delinquent child by reason of committing acts that would constitute assault of a peace officer in violation of R.C. 2903.13(A)/(C)(5), a felony of the fourth degree if committed by an adult; resisting arrest, causing physical harm to a law enforcement officer, in violation of R.C. 2921.33(B), a misdemeanor of the first degree if committed by an adult; and disorderly conduct in violation of R.C. 2917.11, a misdemeanor of the fourth degree if committed by an adult. A.D. denied the allegations and the matter proceeded to an adjudicatory hearing.

{¶18} The State called Deputy Fickes, Officer Branham, Deputy Scofield, and Sergeant Horba to testify at the adjudicatory hearing. A.D. testified and she called Ms. Karas and Ms. Gatts as witnesses. Although given an extension of time, A.D. did not present any use of force testimony. In addition to the aforementioned testimony, videos of the incident were admitted into evidence as well as the officers' recorded audio statements, photographs, the Summit County Sheriff's policies and procedure and use of force policy, and Sergeant Horba's report and supplemental report of investigation.

{¶19} The juvenile court adjudicated A.D. a delinquent child by reason of assault of a peace officer in violation of R.C. 2903.13(A)/(C)(5), a felony of the fourth degree if committed by an adult. A.D. was also adjudicated a delinquent child by reason of resisting arrest, causing physical harm to a law enforcement officer in violation R.C. 2921.33(B), a misdemeanor of the

first degree if committed by an adult. The court dismissed with prejudice the complaint for disorderly conduct. The court ordered the probation department to conduct a pre-disposition investigation and to file a report and recommendation.

{¶20} A disposition hearing was held and the trial court ordered A.D. to five days detention at a juvenile detention center, suspended on the condition that, among other conditions, A.D. pay court costs, fines, and that she writes a reflective essay and apology letter. A.D. appeals asserting five assignments of error for this Court's review.

## II.

### ASSIGNMENT OF ERROR I

**THE TRIAL COURT'S ADJUDICATION OF A.D. VIOLATES HER RIGHT TO PERSONAL SECURITY UNDER THE FOURTH AMENDMENT OF THE UNITED STATES CONSTITUTION AND ARTICLE I, SECTION 14 OF THE OHIO CONSTITUTION.**

{¶21} A.D. argues in her first assignment of error that her constitutional right to be free from personal seizure under the Fourth Amendment of the United States Constitution and Article I, Section 14 of the Ohio Constitution precludes her delinquency adjudications. She argues the officers did not have reasonable suspicion to detain her and she asserts an excessive force defense in response to the charge of resisting arrest.

{¶22} The State argues that A.D. should have presented her constitutional challenges in the court below by filing a motion to suppress, which she failed to do. It asserts that A.D. waived appellate review of her constitutional challenges except for plain error and that she has failed to present a plain error argument on appeal. It is the State's position that the arguments presented in A.D.'s first assignment of error, which include her challenges to the State's evidence and the excessive force affirmative defense, overlap the sufficiency and manifest weight arguments presented in the second and third assignments of error.

{¶23} A.D. explains in her reply brief that she is not seeking the exclusion of any evidence. She maintains that the detention was illegal "and that adjudications which are premised on having legally stopped her cannot stand." It is A.D.'s position that she was not required to file a motion to suppress because there is no evidence she sought to be suppressed and because the excessive force defense is not a suppression issue. A.D. challenged the validity of the stop and argued excessive force at the adjudicatory hearing and she argues that, because she raised these arguments below, she did not waive her constitutional claims. A.D. does not dispute that the arguments presented in the first assignment of error overlap with the sufficiency and manifest weight arguments presented in the second and third assignments of error.

{¶24} A motion to suppress is a "'[d]evice used to eliminate from the trial of a criminal case evidence which has been secured illegally[.]'" *Hilliard v. Elfrink*, 77 Ohio St.3d 155, 158 (1996) quoting Black's Law Dictionary (6 ed. 1990) 1014. A motion to suppress can only raise matters that are "capable of determination without the trial of the general issue." Crim.R. 12(C).

{¶25} In this case, A.D. did not seek the suppression of evidence. A.D. defended herself and sought to justify her conduct by asserting an excessive force defense. She claimed her arrest was not lawful, which challenges an element of resisting arrest. A.D.'s arguments pertained to an essential element of the charged offenses and the sufficiency of an excessive force affirmative defense. A.D. sought a determination of the general issues at the adjudicatory hearing that could not properly be established through a pretrial motion. *See In re M.H.*, 2021-Ohio-1041, ¶ 10-11 (1st Dist.) (the affirmative defense of an officer's use of excessive force "cannot properly be established through a pretrial motion."); *State v. Graham*, 2016-Ohio-8503, ¶ 13 (9th Dist.) (an essential element of the offense cannot be contested through a pretrial motion); *State v. Carnes*,

2016-Ohio-8019, ¶ 4 (1st Dist.), *aff'd* 2018-Ohio-3256 (the sufficiency of the state's evidence is a "general issue" to be determined at trial).

**{¶26}** The record establishes that A.D. raised the arguments presented in the first assignment of error at the adjudicatory hearing when she argued the officers did not have reasonable suspicion to detain her and the officers used excessive force. We conclude that A.D. did not waive the arguments presented in her first assignment of error.

**{¶27}** A.D. acknowledges the arguments presented in her first assignment of error overlap with the sufficiency and manifest weight arguments presented in her second and third assignments of error. Accordingly, we decline to separately address the first assignment of error. To facilitate our review, this Court will address the overlapping and interrelated arguments presented in the first assignment of error when addressing the second and third assignments of error. Our disposition of the second and third assignments of error render the first assignment of error moot. *See* App.R. 12(A)(1)(c).

## ASSIGNMENT OF ERROR II

**THE TRIAL COURT'S ADJUDICATION OF A.D. RESTS ON INSUFFICIENT EVIDENCE.**

**{¶28}** A.D. argues in her second assignment of error that the assault and resisting arrest adjudications were based on insufficient evidence as a matter of law. For the reasons set forth below, this assignment of error is overruled.

### Standard of Review

**{¶29}** "[T]his Court applies the same sufficiency . . . standard[] of review in a juvenile delinquency case that it applies in an adult criminal appeal due to the inherently criminal aspects of delinquency proceedings . . . ." (Internal quotations and citations omitted.) *In re V.H.*, 2013-Ohio-5408, ¶ 9 (9th Dist.). "Whether an adjudication of delinquency is supported by sufficient

evidence is a question of law, which this Court reviews de novo." *In re T.A.*, 2020-Ohio-3613, ¶ 8 (9th Dist.), citing *State v. Thompkins*, 78 Ohio St.3d 380, 386 (1997).

> An appellate court's function when reviewing the sufficiency of the evidence to support [an adjudication of delinquency] is to examine the evidence admitted at trial to determine whether such evidence, if believed, would convince the average mind of the defendant's guilt beyond a reasonable doubt. The relevant inquiry is whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt.

*State v. Jenks*, 61 Ohio St.3d 259, 273 (1991), paragraph two of the syllabus. "'The test for sufficiency requires a determination of whether the State has met its burden of production at trial.'" *In re V.H.* at ¶ 9, quoting *State v. Collmar*, 2013-Ohio-1766, ¶ 7 (9th Dist.).

**A.**

**<u>Assault of a Peace Officer – R.C. 2903.13(A)/(C)(5)</u>**

{¶30} The juvenile court adjudicated A.D. a delinquent child by reason of assault of a peace officer in violation of R.C. 2903.13. R.C. 2903.13(A), which prohibits assault, provides that "[n]o person shall knowingly cause or attempt to cause physical harm to another . . . ." R.C. 2901.22(B) describes the culpable mental state required to prove a violation of R.C. 2903.13(A):

> A person acts knowingly, regardless of purpose, when the person is aware that the person's conduct will probably cause a certain result or will probably be of a certain nature. A person has knowledge of circumstances when the person is aware that such circumstances probably exist. When knowledge of the existence of a particular fact is an element of an offense, such knowledge is established if a person subjectively believes that there is a high probability of its existence and fails to make inquiry or acts with a conscious purpose to avoid learning the fact.

Assault of a peace officer in violation of R.C. 2903.13(A) is a felony of the fourth degree if committed by an adult. R.C. 2903.13(C)(5).

{¶31} A.D. does not dispute that Deputy Fickes is a peace officer and that he sustained physical harm in the incident. She argues that the assault on a peace officer adjudication was not

based on the sufficiency of the evidence. A.D. contends that there is no proof she "knowingly" caused physical harm to Deputy Fickes.

**Knowingly Cause Physical Harm**

{¶32} A.D. argues that she did not knowingly cause physical harm to Deputy Fickes. She argues that she did not know who had approached her from behind and that, as a result, this "spurred her multidirectional flailing" and "'mule kick[s][.]'" The State argues that the testimony presented at the adjudicatory hearing establishes that A.D. "knowingly swung at Deputy Fickes and kicked him to both attempt to and actually cause physical harm."

{¶33} As set forth above, "[a] person acts knowingly, regardless of purpose, when the person is aware that the person's conduct will probably cause a certain result or will probably be of a certain nature." R.C. 2901.22(B). "Knowingly" concerns a defendant's culpable mental state. "'When the defendant's culpable mental state is in issue, the proof of a mental state must be derived from circumstantial evidence, as direct evidence will not be available.'" *State v. Syed*, 2018-Ohio-1438, ¶ 23 (9th Dist.), quoting *State v. Flowers*, 2004-Ohio-4455, ¶ 15 (9th Dist.). *See also State v. Celli*, 2017-Ohio-2746, ¶ 18 (9th Dist.), quoting *State v. Huff*, 145 Ohio App.3d 555, 563 (1st Dist. 2001) (Absent a defendant's admission, whether a person acts knowingly can only be determined from all the surrounding facts and circumstances, including the doing of the act itself.).

{¶34} There is no dispute that Deputy Fickes sustained physical harm in the struggle. There is sufficient evidence to establish that A.D. should have been aware that her conduct would probably result in an assault in this case. Deputy Fickes testified A.D. caused the physical harm when she kicked him "several times" in the knee and scratched his arm. Officer Branham and Deputy Scofield testified they observed A.D. kicking Deputy Fickes "multiple times[.]" According to Deputy Scofield, A.D. was kicking "as hard as she could." A.D. is seen in the videos

forcefully kicking Deputy Fickes multiple times and swinging her arms at the officers. A.D. acknowledges that she "was kicking [the officers]" and claims that she was kicking "because [she] wanted to get away." Viewing the testimony and evidence in a light most favorable to the State, we conclude that the juvenile court could reasonably have concluded beyond a reasonable doubt that A.D. knowingly caused physical harm to Deputy Fickes.

{¶35} Based on a thorough review of the record, this Court concludes that there is sufficient evidence upon which the juvenile court could reasonably conclude that all elements of assault of a peace officer in violation of R.C. 2903.13(A)/(C)(5) were established beyond a reasonable doubt.

**B.**

**Resisting Arrest – R.C. 2921.33(B)**

{¶36} A.D. was adjudicated a delinquent child by reason of resisting arrest, causing physical harm to a law enforcement officer, in violation of R.C. 2921.33(B). R.C. 2921.33(B) states:

> No person, recklessly or by force, shall resist or interfere with a lawful arrest of the person . . . and, during the course of or as a result of the resistance or interference, cause physical harm to a law enforcement officer.

Whoever violates R.C. 2921.33(B) is guilty of resisting arrest, a misdemeanor of the first degree if committed by an adult. R.C. 2921.33(D). A.D concedes in her brief that she was placed under arrest, but disputes whether the arrest was lawful.

**Reasonable Suspicion to Detain**

{¶37} Deputy Scofield testified at the adjudicatory hearing that he was working the security desk when he received an internal phone call that a female juvenile "left [a] hearing" and that she could not "leave the facility." He believed the call was from a bailiff or magistrate. Deputy

Scofield notified his partner, Deputy Fickes, that a female "left a court proceeding" and that "she's not to leave the building[.]" Officer Branham was entering the courthouse at the time and he recalled overhearing the deputies' conversation. Officer Branham recalled hearing that "a juvenile had run from the courtroom and that the court requested her back upstairs."

{¶38} Deputy Scofield remained at the security desk while Deputy Fickes approached A.D. who was sitting on a first-floor bench. According to Deputy Fickes, A.D. told him that he could not make her go back upstairs and she did not care "what the Judge is doing." Deputy Fickes believed A.D. had come from one of the courtrooms. He testified that A.D. became "very erratic" after he approached her the second time and that she stood up "to go past me . . . ." A.D. acknowledged that she stood up with the intent to go around the deputy and to possibly "go outside."

{¶39} Deputy Fickes became concerned when A.D. tried "to push past [him]." He did not know why the judge or a magistrate wanted A.D. to return and he was concerned for A.D.'s safety should she "run[] out of the building, . . . get[] hit by a car, or . . . does self-harm or . . . [if] she has a warrant." Deputy Scofield and Officer Branham also testified that officers have a special responsibility when dealing with juveniles and that they are responsible if a juvenile gets away and something happens.

{¶40} Viewing the testimony and evidence in a light most favorable to the State, we first conclude that the officers had reasonable suspicion to detain A.D. under the circumstances. While the officers providing security at a courthouse may be more accurately said to be performing something akin to a community caretaker role rather than serving in an investigatory capacity, the parties agree that the officers' actions in this case were an investigative stop; for purposes of this appeal we shall assume that to be true. This Court has addressed investigative stops, stating:

In evaluating the facts and inferences supporting the stop, a court must consider the totality of the circumstances as 'viewed through the eyes of a reasonable and cautious police officer on the scene, guided by his experience and training.' *State v. Bobo* [], 37 Ohio St.3d 177, 179 [(1988)], quoting *United States v. Hall* [], 525 F.2d 857, 859 [(C.A.D.C. 1976)]. A totality of the circumstances review includes consideration of '(1) [the] location; (2) the officer's experience, training or knowledge; (3) the suspect's conduct or appearance; and (4) the surrounding circumstances.' *State v. Biehl*, [] 2004-Ohio-6532, [] ¶ 14 [(9th Dist.)], citing *Bobo*, 37 Ohio St.3d at 178-79.

*State v. McCraney*, 2010-Ohio-2667, ¶ 8 (9th Dist.). The Ohio Supreme Court has stated that "[a] telephone tip can, by itself, create reasonable suspicion justifying an investigatory stop where the tip has sufficient indicia of reliability." *Maumee v. Weisner*, 87 Ohio St.3d 295 (1999), paragraph two of the syllabus.

{¶41} Placing handcuffs on someone "does not per se transform an investigatory stop into an arrest." *State v. Mason*, 2016-Ohio-7081, ¶ 22 (9th Dist.), citing *State v. Snyder*, 2006-Ohio-6911, ¶ 13 (9th Dist.). An individual may be handcuffed in an investigatory stop, "particularly where such restraint is necessary for the safety of the suspect or the investigating officers." *Snyder* at ¶ 13.

{¶42} The record supports the conclusion that the officers had reasonable suspicion to conduct an investigatory stop in this case. Deputy Fickes initiated the stop because, based on the internal phone call the deputies received at the security desk, he believed A.D. had left one of the courtrooms and that the judge or a magistrate was ordering her return. While the caller did not identify herself, because the call was from an internal phone, the deputies were aware it came from a court official and the call had sufficient indica of reliability. The call identified the child to be sent back as a female, and a female came down the stairs at that time. These facts are sufficient indicators of the caller's reliability for the officers to act on the call. A.D. became "pretty erratic" when talking to Deputy Fickes and she acknowledges that she stood up with the intent to leave and

to possibly "go outside." The testimony supports the conclusion that there was a reasonable concern for A.D.'s safety should she leave and that the use of handcuffs was reasonable under the circumstances. Based on the record, and given the totality of the circumstances presented, we conclude that the officers had reasonable suspicion to initiate the stop.

## Lawful Arrest

{¶43} "A lawful arrest is an essential element of the crime of resisting arrest." *State v. Vactor*, 2003-Ohio-7195, ¶ 34 (9th Dist.). As stated in *Vactor*, "[t]o prove that there was a lawful arrest, 'the state must prove not only that there was a reasonable basis to believe that an offense was committed, but also that the offense was one for which the defendant could be lawfully arrested.'" *Id.*, quoting *State v. Thompson*, 116 Ohio App.3d 740, 743 (1st Dist. 1996); *State v. Jones*, 2022-Ohio-2122, ¶ 9 (9th Dist.). "The state need not prove that the defendant was in fact guilty of the offense for which the arrest was based when proving the element of lawful arrest." *Vactor* at ¶ 34; *Jones* at ¶ 9.

{¶44} A.D. argues the resisting arrest adjudication rests on insufficient evidence as she was not under a lawful arrest. She contends that she was not under a lawful arrest considering the disorderly conduct charge was dismissed. A.D. also asserts an excessive force defense, arguing that her resistance was necessary to protect herself from the officer's excessive force. The State argues it "must only prove probable cause to arrest, not that the defendant is guilty of the [underlying] offense beyond a reasonable doubt."

{¶45} As set forth previously, we conclude from the parties' framing of the issues that the officers had reasonable suspicion to conduct an investigatory stop of A.D. and to restrain her considering the officers' safety concerns. *Synder*, 2006-Ohio-6911, at ¶ 13 (9th Dist.) (officers may handcuff a suspect during an investigatory stop where "restraint is necessary for the safety of

the suspect or the investigating officers."). We also conclude the sufficiency of the evidence establishes the officers had a reasonable basis to believe that an offense was committed during the investigative stop and that the offense was one for which A.D. could be lawfully arrested.

{¶46} This Court recognized in *Jones*, 2022-Ohio-2122, at ¶ 12 (9th Dist.) that an arrestable offense may not occur until after the initial detainment. In *Jones*, a store undercover loss protection officer reported to deputies that she observed a woman taking items without paying for them. *Id.* at ¶ 10. The officer only saw the woman taking items, not Mr. Jones who was accompanying the woman. The woman was brought to the store's office for questioning and Mr. Jones followed. *Id.*

{¶47} The first deputy who arrived to investigate the reported theft testified, based on his years of experience and Mr. Jones's responses, that he believed Mr. Jones was involved in the theft. *Id.* at ¶ 11. Believing that Mr. Jones was involved, the deputy asked "for his identification more than once, but Mr. Jones failed to identify himself" as required by R.C. 2921.29(A)(1). *Id.* Mr. Jones's initial detainment had thus escalated into an arrestable offense. *Id.* at ¶ 12.

{¶48} Mr. Jones was charged with theft and resisting arrest. *Id.* at ¶ 3. The trial court granted Mr. Jones's Crim.R. 29 motion on the theft charge and he was found guilty of resisting arrest. *Id.*

{¶49} This Court concluded on appeal "that sufficient evidence was introduced for a rational jury to conclude that Mr. Jones was in fact arrested [for failure to disclose his personal information as required by R.C. 2921.29(A)(1)] and that the arrest was lawful." *Id.* at ¶ 12. We recognized that a lawful arrest may be based on conduct that occurs after the initial detainment. *Id.* at ¶ 9. *See also Vactor*, 2003-Ohio-7195, at ¶ 35 (9th Dist.) (recognizing that a resisting arrest conviction may be based on conduct that occurs after an initial stop).

{¶50} Further in *Vactor* we held that the state need not prove that the defendant was in fact guilty of the charge the arrest was based on when proving unlawful arrest. *Id* at ¶ 34. A police officer initiated an investigative stop of Mr. Vactor solely because he matched the description of a robbery suspect. *Id.* at ¶ 15. Mr. Vactor was later charged with aggravated robbery and other offenses based on conduct that occurred after the stop. *Id.* at ¶ 2, 14-20. Even though Mr. Vactor was found not guilty of aggravated robbery, the basis for the stop, this Court affirmed his other convictions. *Id.* at ¶ 40. We recognized in *Vactor* that "[t]he state need not prove that the defendant was in fact guilty of the offense for which the arrest was based when proving the element of lawful arrest." *Id.* at ¶ 34.

{¶51} We have already concluded that the officers had reasonable suspicion to detain A.D. and to place her in handcuffs due to safety concerns. A struggle ensued as the officers tried placing handcuffs on A.D. As addressed above, Deputy Fickes was kicked multiple times in the knee in the struggle and he sustained a scratch on his arm. Deputy Fickes testified that they arrested A.D. after she kicked the deputy. Based on the record, we have concluded that there is sufficient evidence upon which to conclude that all elements of assault of a peace officer, a violation of R.C. 2903.13(A)/(C)(5) if committed by an adult were established beyond a reasonable doubt.

{¶52} This Court has concluded that an arrestable offense may be based on conduct that occurs after an investigatory stop. *Jones*, 2022-Ohio-2122, at ¶ 12 (9th Dist.). We have also concluded that the State does not need to prove the defendant was actually guilty of the offense on which the arrest was based when proving lawful arrest. *Id.* at ¶ 9; *Vactor*, 2003-Ohio-7195, at ¶ 34 (9th Dist.). The fact that the juvenile court did not adjudicate A.D. delinquent for disorderly conduct is immaterial. Based on the record, the State established that the officers had a reasonable

basis to believe A.D. engaged in conduct that would constitute assault on a peace officer if committed by an adult.

{¶53} We further conclude that the State introduced sufficient evidence that A.D. "recklessly or by force, . . . resist[ed] or interfere[red] with a lawful arrest . . . ." R.C. 2921.33(B). *Jones* recognized that to "resist or interfere" with a lawful arrest means to "'oppose, hinder, impede, interrupt, or prevent an arrest by a law-enforcement officer by the use of force or recklessly by any means, such as going limp, or any other passive or indirect conduct.'" *Jones*, 2022-Ohio-2122, at ¶ 13 (9th Dist.), quoting *Ohio Jury Instructions*, CR Section 521.33 (Rev. May 22, 2021). R.C. 2901.22(C) states that a "[a] person acts recklessly when, with heedless indifference to the consequences, the person disregards a substantial and unjustifiable risk that the person's conduct is likely to cause a certain result or is likely to be of a certain nature." "Force" is defined as "any violence, compulsion, or constraint physically exerted by any means upon or against a person or thing." R.C. 2901.01(A)(1).

{¶54} Deputy Fickes testified that A.D. "started to swing[,]" "kick[]" and "scream[]" when he reached for his handcuffs. The officers testified that A.D. kicked Deputy Fickes "several times" in the knee and scratched his arm. The videos and exhibits support the officers' testimony. A.D. acknowledges that she kicked in the struggle.

{¶55} Upon a thorough review of the record, we conclude that there is sufficient evidence upon which the juvenile court could reasonably conclude that all elements of assault of a peace officer, a violation of R.C. 2901.13(A)/(C)(5) if committed by an adult, and resisting arrest, causing physical harm to a law enforcement officer, a violation of R.C. 2921.33(B) if committed by an adult, were established beyond a reasonable doubt. Assignment of error number two is overruled.

**ASSIGNMENT OF ERROR III**

**THE TRIAL COURT'S ADJUDICATION OF A.D. WAS AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE.**

**{¶56}** A.D. argues in her third assignment of error that her adjudications were against the manifest weight of the evidence. For the reasons set forth below, this assignment of error is overruled.

**Standard of Review**

**{¶57}** "When considering whether [an adjudication] is against the manifest weight of the evidence, this Court applies a different standard than in a sufficiency analysis." *State v. Zappa*, 2022-Ohio-243, ¶ 17 (9th Dist.). To evaluate the weight of the evidence, this Court must:

> review the entire record, weigh the evidence and all reasonable inferences, consider the credibility of witnesses and determine whether, in resolving conflicts in the evidence, the trier of fact clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered.

*State v. Otten*, 33 Ohio App.3d 339, 340 (9th Dist. 1986). A reversal on this basis is reserved for the exceptional case in which the evidence weighs heavily against the conviction. *Thompkins*, 78 Ohio St.3d at 387.

**Analysis**

**{¶58}** A.D. argues that "that the trial court clearly lost its way in resolving factual differences in the state's favor to support [her] adjudications." She argues that her assault adjudication is against the manifest weight of the evidence as she did not "'knowingly'" strike Deputy Fickes. "[C]onceding for the purposes of argument that there was sufficient evidence of resisting arrest," she argues that her resisting arrest adjudication is against the manifest weight of the evidence as the phone call was an insufficient basis for her arrest. She also asserts an excessive force affirmative defense.

**{¶59}** The State argues that the testimony and evidence established that A.D. repeatedly kicked Deputy Fickes and that her actions were not merely "'flailing[]'" as she alleges. It asserts that the evidence established A.D. knowingly kicked the deputy and that the assault adjudication is not against the manifest weight of the evidence. The State further argues that A.D. did not meet her burden of establishing excessive force and that her resisting arrest adjudication is also not against the manifest weight of the evidence.

**A.**

**Assault of a Peace Officer – R.C. 2903.13(A)(C)(5)**

**{¶60}** Having reviewed the record, we cannot conclude that this is an exceptional case where the juvenile court lost its way by adjudicating A.D. a delinquent child by reason of committing the act assault of a peace officer in violation of R.C. 2903.13(A)/(C)(5), a felony of the fourth degree if committed by an adult. *See Otten* at 340. This Court has already determined that Deputy Fickes had reasonable suspicion to conduct an investigatory stop and that, due to safety concerns, the use of handcuffs was reasonable under the circumstances. Deputy Fickes testified that A.D. became erratic and that she started to swing her arms when he reached for his handcuffs. A struggle ensued and A.D. kicked Deputy Fickes "several times" in the knee and scratched his arms. Officer Branham saw A.D. kick Deputy Fickes "multiple times[.]" Deputy Scofield testified that A.D. was kicking "as hard as she could." It is undisputed that Deputy Fickes sustained personal harm. A.D.'s assault on a peace officer adjudication is not against the manifest weight of the evidence.

**B.**

**Resisting Arrest – R.C. 2921.33(B)**

**{¶61}**  We also cannot conclude that this is an exceptional case where the juvenile court lost its way by adjudicating A.D. a delinquent child by reason of committing the act of resisting arrest in violation of R.C. 2921.33(B), a misdemeanor of the first degree if committed by an adult. There is no dispute that a struggle ensued when Deputy Fickes reached for his handcuffs and the officers tried to place the handcuffs on A.D.  The officers testified that A.D. had become erratic, that she was screaming, and that she repeatedly yelled profanities at the officer.  A.D. kicked and scratched Deputy Fickes in the struggle.  The State established the officers had a reasonable belief that A.D. had committed assault on a peace officer and disorderly conduct.  As previously set forth, an arrestable offense may be based on conduct that occurs after the stop and the State was not required to prove disorderly conduct.  *Jones*, 2022-Ohio-2122, at ¶ 12 (9th Dist.); *Vactor*, 2003-Ohio-7195, ¶ 34 (9th Dist.).

**Excessive Force Defense**

**{¶62}**  A.D. asserts an excessive force defense. "Excessive force has been recognized by Ohio courts and the Ohio Jury Instructions as being an affirmative defense to resisting arrest." *Jones*, 2022-Ohio-2122, ¶ 22 (9th Dist.).  As stated in *Jones*:

> In alleging excessive force by an officer to defend against a resisting arrest charge, the defendant effectively admits [her] resistance, if only to show that it was necessary in order to protect [her]self from the officer's excessive force. The defense is peculiarly within the knowledge of the defendant because only the defendant can adequately demonstrate to the trier of fact the point at which [s]he felt [s]he had to protect [her]self from the actions of the arresting officer. The burden of going forward with the evidence of an affirmative defense, and the burden of proof, by a preponderance of the evidence, for an affirmative defense . . . is upon the accused.

(Internal quotations and citations omitted.) *Id.* at ¶ 23. At issue in *Jones* was whether the finding that Mr. Jones "failed to prove his affirmative defense of excessive force was against the manifest weight of the evidence." *Id.* at ¶ 21. Because the burden to prove an affirmative defense is on the accused, we review the excessive force affirmative defense under a manifest weight standard.

{¶63} The officers testified that they did not punch, strike or kick A.D, and that they did not intentionally force A.D. to the ground. The officers did not use batons, mace, or tasers on A.D. A.D. attempted to hit and kicked the officers during the arrest and they used only the force necessary to protect themselves and handcuff her. The videos played and admitted at the adjudicatory hearing support the officers' testimony.

{¶64} Sergeant Horba, who investigated the incident, described the use of force used against A.D. as "[m]ild" considering A.D.'s actions. He testified that based on his investigation the actions of the officers "were objectively reasonable and in compliance with the Summit County Sheriff's Office Use of Force Policy 6.5.1."

{¶65} A.D. had the burden to establish excessive force by a preponderance of the evidence. *Jones*, 2022-Ohio-2122, at ¶ 23 (9th Dist.); R.C. 2901.05(A). The trial court granted A.D. a continuance and continued the adjudicatory hearing by approximately 68 days to allow A.D. time to obtain her own witness in support of her use of force defense. A.D. acknowledged that the officers did not kick or punch her in the struggle nor did they use a taser, A.D. presented no other testimony or evidence at the adjudicatory hearing in support of or pertaining to her excessive force defense.

{¶66} The undisputed testimony was that the officers did not punch, strike or kick A.D., and they did not intentionally force A.D. to the ground. Rather, the officers and A.D. lost their balance in the struggle which caused them to fall to the ground. Although she was granted an

extension of time and the adjudicatory hearing was continued, A.D. did not present any witnesses to testify in support of her excessive force defense.

{¶67} Upon our review of the entire record, we conclude that the juvenile court, in resolving any conflicts in the evidence, did not clearly lose its way and create a manifest miscarriage of justice requiring a reversal of A.D.'s adjudications. *See Otten*, 33 Ohio App.3d at 340. This is also not an exceptional case in which the evidence weighs heavily against the adjudications. *See Thompkins*, 78 Ohio St.3d at 387. A.D.'s manifest weight of the evidence argument, as asserted in her third assignment of error, is overruled.

### ASSIGNMENT OF ERROR IV

**THE TRIAL COURT IMPROPERLY ADMITTED OPINION TESTIMONY REGARDING THE OFFICERS' USE OF FORCE.**

{¶68} A.D. argues in her fourth assignment of error that the juvenile court erred in admitting Sergeant Horba's use of force testimony. She contends that Sergeant Horba's testimony was not in compliance with Crim.R. 16(K), Evid.R. 702, and Evid.R. 704. We disagree.

{¶69} "A trial court's decision to admit or exclude testimony is reviewed for an abuse of discretion." *State v. Green*, 2019-Ohio-4967, ¶ 18 (9th Dist.), citing *State v. Pitts*, 2018-Ohio-3216, ¶ 12 (9th Dist.). An abuse of discretion is something more than an error of law or in the exercise of judgment; "it implies that the court's *attitude* is unreasonable, arbitrary or unconscionable." (Emphasis added.) *Blakemore v. Blakemore*, 5 Ohio St.3d 217, 219 (1983). When applying this standard, a reviewing court is precluded from simply substituting its judgment for that of the trial court. *Pons v. Ohio State Med. Bd.*, 66 Ohio St.3d 619, 621 (1993).

{¶70} Although *Blakemore* is often cited as the general standard for reviewing discretionary decisions, the Ohio Supreme Court has provided additional guidance about the nature of an abuse of discretion:

> Stated differently, an abuse of discretion involves more than a difference in opinion: the "'term discretion itself involves the idea of choice, of an exercise of the will, of a determination made between competing considerations.'" *State v. Jenkins*, 15 Ohio St.3d 164, 222 (1984), quoting *Spalding v. Spalding*, 355 Mich. 382, 384 (1959). For a court of appeals to reach an abuse-of-discretion determination, the trial court's judgment must be so profoundly and wholly violative of fact and reason that "'it evidences not the exercise of will but perversity of will, not the exercise of judgment but defiance thereof, not the exercise of reason but rather of passion or bias.'" *Id.*, quoting *Spalding* at 384-385.

*State v. Weaver*, 2022-Ohio-4371, ¶ 24.

{¶71} A.D. first argues that Sergeant Horba's testimony should have been excluded due to a discovery violation. She argues the State failed to produce its report 21 days prior to the adjudicatory hearing as required by Crim.R. 16(K). It appears from the plain language of Crim.R. 1(C)(5) that the criminal rules do not apply to juvenile proceedings as that rule states that the rules do not apply to "juvenile proceedings against a child." Even assuming Crim.R. 16(K) applies, the record does not support this contention. The adjudicatory hearing commenced on February 21, 2024, and as stated on the record at the adjudicatory hearing, the State produced Sergeant Horba's use of force report to A.D.'s counsel through its online server database on November 8, 2023. The record clearly provides that A.D had the reports prior to 21 days before her hearing. The record further establishes the juvenile court continued Sergeant Horba's testimony and the adjudicatory hearing for approximately 68 days to provide A.D. time to obtain her own use of force witness to cure any potential confusion in discovery. We cannot conclude that the trial court abused its discretion in finding no discovery violation. *See State v. Roberts*, 2017-Ohio-9079, ¶ 11 (9th Dist.) (trial court did not abuse its discretion in finding no discovery violation where registered nurse's report was provided well in advance of trial).

{¶72} A.D. next challenges Sergeant Horba's expert designation and argues that his testimony should have been excluded under Evid.R. 702 and Evid.R. 704. While defense counsel

had objected generally to Sergeant Horba's testimony, he did not present specific Evid.R. 702 or Evid.R. 704 objections. The failure "to preserve an objection in the trial court constitutes a forfeiture of that issue." *State v. Klein*, 2013-Ohio-3514, ¶ 16 (9th Dist.) *See also State v. Payne*, 2007-Ohio-4643, ¶ 23; *State v. Bowerman*, 2014-Ohio-4264, ¶ 16 (9th Dist.).

**{¶73}** "Where a party has forfeited an objection . . . , the objection may still be assigned as error on appeal if a showing of plain error is made." *State v. Feliciano*, 2010-Ohio-2809, ¶ 8 (9th Dist.). A.D. fails to make a plain error argument in her fourth assignment of error and this Court will not sua sponte make such an argument on her behalf. *State v. Fleckenstein*, 2023-Ohio-4347, ¶ 10 (9th Dist.) A.D.'s fourth assignment of error is overruled.

## ASSIGNMENT OF ERROR V

**THE TRIAL COURT COMMITTED CUMULATIVE ERRORS WHICH DEPRIVED A.D. OF A FAIR TRIAL.**

**{¶74}** A.D. argues in her fifth assignment of error that cumulative errors deprived her of a fair adjudicatory hearing. We disagree.

**{¶75}** "Under the cumulative error doctrine, a conviction may be reversed when the cumulative effect of errors deprives a defendant of the constitutional right to a fair trial even though none of the errors, in isolation, was prejudicial." *State v. Boone*, 2013-Ohio-2664, ¶ 38 (9th Dist.), citing *State v. DeMarco*, 31 Ohio St.3d 191 (1987), paragraph two of the syllabus. If there were not multiple errors, however, the doctrine of cumulative error does not apply. *State v. Hunter*, 2011-Ohio-6524, ¶ 132; *State v. Jenkins*, 2018-Ohio-4814, ¶ 30 (9th Dist.).

**{¶76}** A.D. argues the juvenile court committed a series of errors, including: (1) allowing the admission of Sergeant Horba's testimony; (2) failing to issue an order preventing the State's witnesses from talking to one another about the case during recesses; and (3) allegedly confusing the right of confrontation with an obligation to remain in the courtroom. This Court has determined

that it was not an abuse of discretion to allow the admission of Sergeant Horba's testimony and that A.D. forfeited her objections to this testimony.

{¶77} A.D. acknowledges that "courts are not obligated to order witnesses not to talk during breaks[]" but still maintains that it was error for the court to not issue such an instruction. The trial court addressed this issue at the adjudicatory hearing and the State represented that it had already instructed its witnesses not to talk about the matter during breaks. At defense counsel's request, the court instructed the State's witnesses not to talk on break and defense counsel represented that he was satisfied with this instruction. No further objections were raised. A.D. has not established error, nor has she set forth any basis as to how this affected the outcome of the adjudicatory hearing.

{¶78} A.D. also argues the trial court confused the confrontation clause with an obligation to remain in the courtroom. Based on the record, however, the court allowed A.D. to "step out[]" when requested with the instruction to "[k]nock on the door when you're ready to come back into the courtroom." The court allowed A.D.'s father to also leave with the juvenile. Again, A.D. has not established that an error occurred or how this affected the outcome of the adjudicatory hearing.

{¶79} Upon review, we conclude that there were not multiple instances of error and that the cumulative error doctrine does not apply. A.D.'s fifth assignment of error is overruled.

III.

{¶80} A.D.'s assignments of error are overruled. The disposition of the Summit County Court of Common Pleas, Juvenile Division, is affirmed.

Judgment affirmed.

———

There were reasonable grounds for this appeal.

We order that a special mandate issue out of this Court, directing the Court of Common Pleas, County of Summit, State of Ohio, to carry this judgment into execution. A certified copy of this journal entry shall constitute the mandate, pursuant to App.R. 27.

Immediately upon the filing hereof, this document shall constitute the journal entry of judgment, and it shall be file stamped by the Clerk of the Court of Appeals at which time the period for review shall begin to run. App.R. 22(C). The Clerk of the Court of Appeals is instructed to mail a notice of entry of this judgment to the parties and to make a notation of the mailing in the docket, pursuant to App.R. 30.

Costs taxed to Appellant.

_____
SCOT STEVENSON
FOR THE COURT

SUTTON, J.
CONCURS.

HENSAL, J.
CONCURS IN JUDGMENT ONLY.

APPEARANCES:

ANDREW KARAS, Attorney at Law, for Appellant.

ELLIOT KOLKOVICH, Prosecuting Attorney, and C. RICHLEY RALEY, JR., Assistant Prosecuting Attorney, for Appellee.